# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VERNON W. HILL, II, SHIRLEY HILL AND INTERARCH, INC.<br><br>Plaintiffs<br><br>v.<br><br>COMMERCE BANCORP, LLC AND TD BANK, N.A.,<br><br>Defendants. | Civil Action No.: 1:09-cv-03685 (RBK-JS) |

---

## NOTICE OF MOTION FOR
## PARTIAL SUMMARY JUDGMENT

---

To:     Edwin J. Jacobs, Jr., Esquire
        **Jacobs & Barbone, P.A.**
        1125 Pacific Avenue
        Atlantic City, NJ 08401
        Attorneys for Plaintiffs

**PLEASE TAKE NOTICE** that the undersigned attorneys for Defendants, Commerce

Bancorp, LLC and TD Bank, N.A., will hereby move before this Court on December 6, 2010 for

an Order granting partial summary judgment in favor of Defendants on the Ninth Claim for

Relief of the Plaintiffs Vernon W. Hill, II, Shirley Hill and InterArch, Inc.'s Amended

Complaint.

In support of their motion, Defendants will rely upon the accompanying (a) Brief in

Support of the Motion for Partial Summary Judgment to Dismiss the Ninth Claim for Relief in

the Amended Complaint; (b) Certification of Susan M. Leming, Esquire with attached Exhibits

1374744.1

and (c) Defendants' Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment to Dismiss the Ninth Claim for Relief in the Amended Complaint.

Oral argument is requested if this motion is opposed. A proposed form of Order is submitted herewith.

Respectfully submitted,

Dated:    November 12, 2010

By:    s/ William M Tambussi
William M. Tambussi. Esq.
Susan M. Leming, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue - P.O. Box 539
Westmont, New Jersey 08108
wtambussi@brownconnery.com
sleming@brownconnery.com
Tel.: (856) 854-8900
Fax: (856) 858-4967

1374744.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

VERNON W. HILL, II, SHIRLEY
HILL AND INTERARCH, INC.

        **Plaintiffs**

   v.

COMMERCE BANCORP, LLC
AND TD BANK, N.A.,

        **Defendants.**

Civil Action No.:   1:09-cv-03685 (RBK-JS)

---

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT TO DISMISS THE NINTH CLAIM FOR RELIEF OF PLAINTIFFS
INTERARCH, INC. AND SHIRLEY HILL'S AMENDED COMPLAINT**

---

**BROWN & CONNERY, LLP**
Attorneys for Defendants
William M. Tambussi, Esquire
Susan M. Leming, Esquire
360 Haddon Avenue, P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
(856) 858-4967 (facsimile)
wtambussi@brownconnery.com
sleming@brownconnery.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ............................................................................................................1

INTERARCH AND MRS. HILL'S INDEMNIFICATION CLAIM...................................1

LEGAL ARGUMENT ......................................................................................................3

    I.      Summary Judgment Standard......................................................................3

    II.     Shirley Hill and InterArch Are Not Entitled to Indemnification Under the Agency Agreement. .....................................................................................4

    III.    Shirley Hill and InterArch No Longer Assert Any Claim for Indemnification Related to Federal Regulatory Investigations ..................6

CONCLUSION ...............................................................................................................8

1374752.1

## TABLE OF AUTHORITIES

### FEDERAL CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)....................................................3,4

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ....................................................................3

Connecticut General Life Insurance Co. v. Punia, 884 F. Supp. 148 (D.N.J. 1995)...........4

Harbour Cove Marine Services, Inc. v. Rabinowitz, 2005 U.S. Dist. LEXIS 36794
(D.N.J. Aug. 29, 2005) .......................................................................................................4

King v. Venetian Corp., 2009 U.S. Dist. LEXIS 98406 (D.N.J. Oct. 22, 2009)................4

Matsushita Electric Indus. Co., Ltd. v. Zenith Radio, 475 U.S. 574 (1986) ......................3

Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989).................................3

### STATE CASES

Azurak v. Corporate Property Investors, 347 N.J. Super. 516 (App. Div. 2002)................5

Domanske v. Rapid-American Corp., 330 N.J. Super. 241 (2000) ....................................4

Mantilla v. NC Mall Associates, et al., 167 N.J. 262 (2001)..............................................5

Mautz v. J.P. Patti Co., et al., 298 N.J. Super. 13 (App. Div. 1997) ..................................5

Ramos v. Browning Ferris Industrial, Inc., 103 N.J. 177 (1986) ........................................4

Schor v. FMS Financial Corp., 357 N.J. Super. 185 (App. Div. 2002)...............................4

### FEDERAL STATUTES

Fed. R. Civ. P. 56................................................................................................................3

1374752.1

## INTRODUCTION

In the Ninth Claim for Relief of the Amended Complaint, the plaintiffs, Shirley Hill and InterArch, Inc. ("InterArch") (collectively referred to as "Plaintiffs"), seek indemnification for attorneys' fees and costs allegedly incurred as a result of responding to regulatory investigations by federal banking authorities and for InterArch asserting this legal action against the defendants. The agreement upon which Mrs. Hill and InterArch seek indemnification, however, does not provide for indemnification for their response to federal regulatory investigations or for InterArch bringing this lawsuit. Plaintiffs recent answers to interrogatories indicate they have abandoned any legal claim for indemnification for their alleged costs or expenses for the federal regulatory investigations. Since Mrs. Hill and InterArch are not entitled to indemnification for any costs associated with the federal regulatory investigations or for costs associated with bringing this action, summary judgment should be granted in favor of the defendants dismissing the Ninth Claim for Relief of Plaintiffs' Amended Complaint as a matter of law.

## INTERARCH AND MRS. HILL'S INDEMNIFICATON CLAIM

The plaintiffs allege that, on February 27, 2006, InterArch and Commerce entered into a Master Agreement for Architectural/Engineering/Consultant Services ("Master Agreement"). *See ¶63, Amended Complaint and Exhibit 1, Master Agreement.* Article 13 of the Master Agreement incorporates by reference Paragraph 5 of a January 15, 2002 Agency Agreement ("Agency Agreement") which provides for indemnification. *See ¶75, Amended Complaint and Exhibit 2, Agency Agreement.*[1]

The Ninth Claim for Relief alleges that pursuant to the Master Agreement and Agency Agreement, Commerce is required to indemnify InterArch and Mrs. Hill for "…the costs they

---

[1] The Amended Complaint defines "Commerce" as Commerce Bancorp, Inc. and Commerce Bank, N.A. *See ¶2-3, Amended Complaint.* Although the plaintiffs alleged that both the Master Agreement and the Agency Agreement were entered into between "Commerce" and InterArch, the agreements were in fact entered into only between Commerce Bancorp, Inc. and InterArch. *See Exhibit 1, Master Agreement and Exhibit 2, Agency Agreement.*

have incurred as a result of the investigation of Commerce by the OCC [Office of the Comptroller of the Currency] and other federal agencies." *See ¶160 of Amended Complaint.* InterArch also seeks indemnification for "...any legal fees it expends to enforce its agreements with Commerce." *Id. at ¶161.*

1374752.1

## LEGAL ARGUMENT

### I.      SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 provides that if the pleadings, depositions, and answers to interrogatories and admissions show that there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c).  The essence of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).

The opposing party must present facts which are substantial, <u>i.e.</u>, real, having real existence, firmly established.  A non-moving party must adduce more than a scintilla of evidence in its favor, and cannot simply assert or reassert factually unsupported allegations in its brief or pleading. <u>Id.</u> at 249; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986); <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989).  As the United States Supreme Court stated in <u>Matsushita Electric Indus. Co., Ltd. v. Zenith Radio</u>, a party opposing summary judgment:

> must do more than simply show that there is some metaphysical doubt as to the material facts.  In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a *genuine issue for trial*."  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'.

<u>Matsushita</u>, 475 U.S. 574, 586-87 (1986)(citations and footnotes omitted).  The Supreme Court went on to note in <u>Celotex</u>: "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." 477 U.S. at 323-24.  The Supreme Court further elaborated on the summary judgment standard in <u>Anderson</u>: "[i]f the evidence [submitted by a party opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50.

1374752.1

Defendants respectfully submit that summary judgment should be granted and the Ninth Claim in the Amended Complaint be dismissed based on the undisputed material facts and governing case law.

## II.   SHIRLEY HILL AND INTERARCH ARE NOT ENTITLED TO INDEMNIFICATION UNDER THE AGENCY AGREEMENT

As there is no genuine issue of material fact that Mrs. Hill and InterArch are ineligible for indemnification under the Agency Agreement, summary judgment should be granted in favor of the defendants, dismissing the Ninth Claim for Relief.  New Jersey law provides that "indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally." King v. Venetian Corp., 2009 U.S. Dist. LEXIS 98406, *19 (D.N.J. Oct. 22, 2009) (quoting Ramos v. Browning Ferris Indus., Inc., 103 N.J. 177, 510 A.2d 1152, 1150 (N.J. 1986)). General contract law requires that a court enforce the terms of a contract when they are clear and unambiguous. Harbour Cove Marine Services, Inc. v. Rabinowitz, 2005 U.S. Dist. LEXIS 36794 (D.N.J. Aug. 29, 2005). A clear and unequivocal contract's meaning must be determined by its contents alone. Id.

It is well-settled law that "a party to a contract 'is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she had a different, secret intention from that outwardly manifested.'" Schor v. FMS Financial Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (citing Domanske v. Rapid-American Corp., 330 N.J. Super. 241, 246 (2000)).  Moreover, courts do not grant parties a contract which is more favorable in terms than that which was bargained for and codified in a clear and unambiguous document. Connecticut General Life Ins. Co. v. Punia, 884 F. Supp. 148, 155 (D.N.J. 1995).

Indemnity provisions in contracts are invoked when a party to the contract has incurred a liability or judgment arising from a legal claim against the party, or in the costs and expenses incurred in connection with defending a legal claim that may result in a liability against the

1374752.1

party. New Jersey courts routinely address claims for contractual indemnification in tort actions brought against the indemnitee. See, e.g., Mantilla v. NC Mall Assocs., et al., 167 N.J. 262, 265 (2001) (defendant shopping mall moved pursuant to an indemnity provision in a written agreement to compel the co-defendant janitorial company to pay for its litigation expenses and provide indemnification for judgment in shopper's slip and fall suit where jury found mall was 40% negligent and janitorial company 50% negligent); see also Azurak v. Corporate Property Investors, 347 N.J. Super. 516, 522-523 (App. Div. 2002)(holding that janitorial service was not required under an indemnification agreement to indemnify a mall for its liability to a customer who suffered a slip and fall); Mautz v. J.P. Patti Co., et al., 298 N.J. Super. 13 (App. Div. 1997) (holding that where a subcontractor's employee filed a personal injury claim against the subcontractor, under indemnification contract subcontractor was only required to indemnify general contractor to the extent that the subcontractor's negligence caused the employee's injury).

The indemnity language of the Agency Agreement between InterArch and the defendants only provides for indemnity in connection with a legal claim that may result in a liability or judgment. Paragraph 5 of the Agency Agreement provides that InterArch, or its officers, directors, employees or agents, are only entitled to indemnification for a liability arising out of InterArch's (or Mrs. Hill's) acts or omissions in connection with any projects InterArch was working on for Commerce. The Agency Agreement does not provide for indemnification, as in this case, for expenses incurred by InterArch in suing the defendants for alleged breach of contract or for expenses allegedly incurred in responding to federal regulatory investigations. The indemnification language contained within the Agency Agreement provides:

> Defendants shall fully indemnify InterArch against, and defend
> and hold it, its officers, directors, employees, agents and other
> representatives harmless from any and all liability and related
> expenses (including without limitation reasonable fees and
> expenses of its counsel) incurred by InterArch and its officers,

1374752.1

> directors, employees, agents and other representatives, <u>which may arise out of acts performed or omitted in connection with Projects and this Agreement</u> (i) by InterArch, its officers, directors, employees, agents and other representatives, except to the extent such liability or expense arises out of its or their own gross negligence or willful misconduct, or (ii) by Defendants or any of its officers, directors, employees, agents or other representatives.

<u>*See*</u> *Amended Complaint at Exhibit 2, Agency Agreement, ¶ 5 (emphasis added)*. Participating in or responding to an investigation by a federal regulatory agency is not a "liability" that Mrs. Hill or InterArch "incurred" as a result of any act or omission in connection with any "Projects" that they were working on for Commerce. Nor is the breach of contract claim and other quasi contractual claims that InterArch now asserts against the defendants in this legal action a "liability" incurred by InterArch. Instead, the contractual claims that InterArch advances in this action are affirmative claims in which InterArch seeks recovery of alleged damages against the defendants.

The Agency Agreement simply and plainly does not provide for indemnification for asserting affirmative claims against the other party to the Agreement or for responding to government investigations. Because the indemnification provisions of the Agency Agreement are clear and not subject to any ambiguity, the defendants are entitled to summary judgment dismissing the Ninth Claim for Relief of the Amended Complaint as a matter of law.

## III.   HILL AND INTERARCH NO LONGER ASSERT ANY CLAIM FOR INDEMNIFICATION RELATED TO FEDERAL REGULATORY INVESTIGATIONS

Mrs. Hill and InterArch's answers to interrogatories indicate that they no longer assert that their indemnification claim applies to any costs incurred for any federal regulatory investigation. When asked directly in interrogatories to support their allegations that they are entitled to indemnification, Mrs. Hill and InterArch's answers only indicate that they were seeking indemnification for enforcement of InterArch's contract rights with the defendants.

1374752.1

Despite the allegations in the Amended Complaint, the interrogatory answer states that there is: ". . . no allegation or claim in this action for contractual indemnification or advancement of defense costs for any particular 'instance' <u>except</u> for the enforcement of contract rights." *See Exhibit 3, Plaintiffs' Answer to Interrogatory Number 13* (*emphasis added*).

Mrs. Hill and InterArch have, therefore, abandoned their claim for indemnification related to any fees or costs allegedly incurred in connection with any federal regulatory investigations. Although the plaintiffs' indemnification claim should be dismissed in its entirety as set forth in Legal Argument II above, summary judgment should also be granted in favor of the defendants to the extent the claim is based upon indemnification for federal regulatory investigations.

1374752.1

## CONCLUSION

For the foregoing reasons, the Defendants, Commerce Bancorp, LLC, and TD Bank, N.A.'s Motion for Partial Summary Judgment should be granted as a matter of law and the Ninth Claim for Relief of Plaintiffs' Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

**BROWN & CONNERY, LLP**
*Attorneys for Defendants*

Dated: November 12, 2010

s/ William M. Tambussi
William M. Tambussi, Esq.
Susan M Leming, Esq.
360 Haddon Avenue - P.O. Box 539
Westmont, New Jersey 08108
Tel.: (856) 854-8900
Fax: (856) 858-4967
wtambussi@brownconnery.com
sleming@brownconnery.com

1374752.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**VERNON W. HILL, II, SHIRLEY HILL AND INTERARCH, INC.**

**Plaintiffs**

v.

**COMMERCE BANCORP, LLC AND TD BANK, N.A.,**

**Defendants.**

Civil Action No.:   1:09-cv-03685 (RBK-JS)

---

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS THE NINTH CLAIM FOR RELIEF OF PLAINTIFFS INTERARCH, INC.'S AND SHIRLEY HILL'S AMENDED COMPLAINT**

---

**BROWN & CONNERY, LLP**
Attorneys for Defendants
William M. Tambussi, Esquire
Susan M. Leming, Esquire
360 Haddon Avenue, P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
(856) 858-4967 (facsimile)
wtambussi@brownconnery.com
sleming@brownconnery.com

1374784.1

The defendants Commerce Bancorp, LLC and TD Bank, N.A., pursuant to Local Rule 56.1(a), hereby provides the following Statement of Undisputed Material Facts:

1.      The defendant Shirley Hill founded InterArch, Inc., an architectural and design firm, in 1973. *See Amended Complaint (Docket Number 77), dated August 19, 2009 at ¶4.*

2.      On January 1, 2006, InterArch and Commerce Bancorp, Inc., entered into a Master Agreement for Architectural/Engineering/Consultant Services ("Master Agreement"). *Id. at ¶63, and Exhibit 1, Master Agreement.*

3.      On January 15, 2002, InterArch and Commerce Bancorp, Inc., entered into an Agency Agreement (the "Agency Agreement"). *Id.* at *Exhibit 2, Agency Agreement.*

4.       InterArch provided services to Commerce Bancorp, Inc., including, but not limited to, interior design, exterior design, space planning, move coordination, and landscape design. *Id. ¶ 4.*

5.      The Agency Agreement contains indemnification clauses for both Commerce Bancorp, Inc. and InterArch. *See Amended Complaint at Exhibit 2, Agency Agreement, ¶¶ 5, 6.*

6.      The indemnification provision in favor of InterArch reads:

> Defendants shall fully indemnify InterArch against, and defend and hold it, its officers, directors, employees, agents and other representatives harmless from any and all liability and related expenses (including without limitation reasonable fees and expenses of its counsel) incurred by InterArch and its officers, directors, employees, agents and other representatives, which may arise out of acts performed or omitted in connection with Projects and this Agreement (i) by InterArch, its officers, directors, employees, agents and other representatives, except to the extent such liability or expense arises out of its or their own gross negligence or willful misconduct, or (ii) by Defendants or any of its officers, directors, employees, agents or other representatives.

*Id.* at ¶5.

7.      When asked in Defendants' First Request for Interrogatory Numbers 12, 13, 14 and 15 to provide "any and all documents that refer or relate to any requests by InterArch and/or

Shirley Hill to Defendants requesting contractual indemnification and the advance payment of defense costs as alleged in paragraph 163 of the Amended Complaint," InterArch and Mrs. Hill respond that there is " . . . no allegation or claim in this action for contractual indemnification or advancement of defense costs for any particular 'instance' except for the enforcement of contract rights." *See Exhibit 3, InterArch and Mrs. Hill's Response to Defendants' First Set of Interrogatories No. 13.*

Respectfully submitted,

**BROWN & CONNERY, LLP**

By:  s/William M. Tambussi

Dated:  November 12, 2010

William M. Tambussi, Esq.
Susan M. Leming, Esq.
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
(856) 858-4967 (facsimile)

1374784.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VERNON W. HILL, II, SHIRLEY HILL AND INTERARCH, INC.**<br><br>**Plaintiffs**<br><br>v.<br><br>**COMMERCE BANCORP, LLC AND TD BANK, N.A.,**<br><br>**Defendants.** | **Civil Action No.: 1:09-cv-03685 (RBK-JS)**<br><br><br>**CERTIFICATION OF SUSAN M. LEMING, ESQ.** |

I, Susan M. Leming, certify as follows:

1.     I am a member of the law firm of Brown & Connery, LLP, and counsel for Plaintiff, Commerce Bancorp, LLC and TD Bank, N.A. in the above-captioned matter.  I submit this Certification in Support of Defendants' Motion for Partial Summary Judgment on the Ninth Claim of Plaintiffs' Amended Complaint.  I am personally familiar with the facts set forth in this Certification.

2.     Attached as Exhibit 1 is a true and correct copy of the Agency Agreement between Commerce Bancorp, Inc. and InterArch, Inc. ("InterArch") entered into January 15, 2002.

3.     Attached as Exhibit 2 is a true and correct copy of the Master Agreement for Architectural/Engineering/Consulting Services between Commerce Bank and InterArch entered into January 1, 2006.

1374808.1

4.    Attached as Exhibit 3 is a true and correct copy of Defendants' First Set of Interrogatories to Plaintiffs Shirley Hill and InterArch, Inc. and Plaintiffs Shirley Hill and InterArch, Inc.'s Answers to Interrogatories.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

BROWN & CONNERY LLP

By:    _Susan M. Leming_
Susan M. Leming

Dated: November 12, 2010

1374808.1

**EXHIBIT "1"**



# Commerce Bank

## MASTER AGREEMENT FOR ARCHITECTURAL/ENGINEERING/ CONSULTANT SERVICES

This Master Agreement (the "Agreement") is entered into as follows:

Agreement Date for Reference Purposes: _____January 1, 2006_____

| | |
|---|---|
| Agreement Term: | January 1, 2006 to December 31, 2006 |
| Owner/Developer: | Commerce Bank |
| Address: | 9000 Atrium Way<br>Mount Laurel, NJ 08054 |
| Consultant: | InterArch |
| Address: | 11000 Atrium Way<br>Mount Laurel, NJ 08054 |
| Phone: | 856-439-9000    Fax: 856-439-9006 |
| E-mail: | IA@SSH-INC.Com    Vendor No. 5587 |

Consultant agrees to provide professional services ("Services"), as hereinafter described in this Master Agreement.

### Article 1 – PROJECT SCOPE OF SERVICES

**A.    Branch Plan- New Prototype**

Maintenance and use of each new prototypical branch    $ 5,000.00
Interior design of each new prototype    $ 5,000.00

**B.    Branch Plan- Interior Renovations**

Interior renovation plan for a prototype branch or a non-prototype branch will be provided on an hourly basis based on the hourly schedule attached.

**C.    Interior Design Services**

Services will be provided for non-prototype branch interior design on an hourly fee basis based on the hourly schedule attached.

**D.    Architectural Services**

Architectural Services will be provided on an hourly basis based on the hourly schedule attached.

**E.    Landscape Architectural Services**

Landscape Architectural Services will be provided on an hourly fee basis based on the hourly schedule attached.

**F.    Construction Management**

Construction Management Services shall be provided on an hourly basis based on the hourly schedule attached.

**G.    Computer Aided Facilities Management (CAFM) Services**

Scope of Services for Computer Aided Facilities Management per InterArch Proposal dated September 29, 2005 attached Addendum A

1.    Creation of the database, including bringing it to a current status, will be billed by InterArch on an hourly basis.

2.    InterArch will operate and maintain the system on an ongoing basis at a fixed monthly fee of $10,000/ month beginning February 1, 2006 or a date mutually agreed to by Owner/Developer and Consultant.

**H.    Additional Consultant Services**

Described below is the nature and scope of any Services not described above and such additional information as appropriate.

_____
_____
_____
_____
_____
_____
_____

Additional services ("Additional Services") may be required because of unusual Site conditions or local code or other regulatory requirements. These additional services shall be described in Article 1.C below and set forth in an Amendment as contemplated in Article 2.

### Article 2 – ADDITIONAL SERVICES PER AMENDMENT

Consultant agrees that it shall furnish Additional Services as authorized and confirmed by execution of any amendment to this Agreement ("Amendment"). Any Amendment shall be in writing, and shall be executed by Consultant and Owner/Developer prior to the commencement by Consultant of any Additional Services. The method and amount of compensation for Additional Services shall be based upon a fixed fee, the hourly rates for Consultant's services and personnel set forth below, or any combination thereof.

| SERVICES/PERSONNEL | RATE/HOUR |
|---|---|
| _"See Addendum B 2006 Rate Schedule"_ | $_____ |
| | $_____ |
| | $_____ |

### Article 3 – SCHEDULE

The Services shall be rendered in accordance with the following schedule:

_____
_____
_____
_____

### Article 4 – REIMBURSABLE EXPENSES

The following expenses ("Reimbursable Expenses") shall be reimbursed to Consultant to the extent same are direct out-of-pocket expenses of consultant, its employees and/or contractors incurred in connection with the Project and subject to prior authorization as noted:

**A.** Reproductions charged shall be billed at actual cost and shall be consistent with Commerce Bank's established pricing with Ridgway's. Invoices shall be provided to support all charges upon request.

Document pricing shall be invoiced at the following rates:

$1.00 per Square Foot for roll bonds (Plotter)

**B.** Postage and handling of drawings, specifications and other documents; overnight shipping, faxes

**C.** Expense of transportation in connection with out-of-town travel including customary Air Travel, Rail Travel, long distance voice, fax and data communication; and filing/administration fees paid for securing approval of authorities having jurisdiction over the Project. Travel reimbursement for mileage shall be made at the current IRS allowable rates, Bridge Tolls, road tolls, and parking fees are allowable reimbursable expenses.

**D.** Expense of any perspective renderings, photography, models and mock-ups requested by Owner/Developer.

**E.** Other reimbursable expenses: _____

All reimbursable expenses shall be paid at actual costs with no mark-up and supported by invoices and expense statements. All other expenses such as but not limited to Long Distance Telephone, Cell Phones, and Blackberry charges shall be considered non-reimbursable unless previously approved in writing by Owner/Developer.

1 of 3



**Article 5 - SERVICES**

**A.**  *Basic Scope*

1.  Consultant shall devote the time, attention and energy necessary for the competent and effective performance of the Services, and Consultant shall use its best efforts to achieve Owner/Developer's objectives, including without limitation attending meetings with Owner/Developer, its employees and agents, coordinating activities with other persons working on the Project, handling and distributing communications relating to the Project, and making local telephone calls.

2.  During the term of this Agreement, Consultant shall maintain the competence and skills commensurate with Consultant's responsibilities under this Agreement and as required by law.

3.  Consultant shall promptly comply with and take all steps necessary to cause all analyses, drawings, designs, plans, specifications, studies and all other documents or instruments prepared or drafted under the terms of this Agreement to comply with all laws, statutes, ordinances and other governmental rules, regulations and requirements, including all amendments thereto, arising out of or relating to Consultant's performance of the Services, including but not limited to the Americans with Disabilities Act of 1990 and its implementing regulations and codes and state laws, regulations and codes relating to access for individuals with disabilities to public accommodations.

4.  All Services performed hereunder by Consultant shall be subject to review and approval by Owner/Developer at intervals mutually agreed upon at the time of authorization to perform Services.

5.  Consultant shall review alternative systems and approaches with Owner/Developer, prepare analyses, drawings and other documents, and make reasonable revisions to such documents. When necessary, Consultant shall consult with public agencies and other organizations concerning utility services and requirements.

6.  Consultant shall recommend to Owner/Developer that appropriate investigations, surveys, tests, analyses and reports be obtained as necessary for the proper execution of Consultant's services.

7.  Consultant shall ensure that documents contain appropriate information required for regulatory permitting and approvals, and shall assist Owner/Developer in filing all appropriate documents concerning the Project that are required for the approval of governmental authorities having jurisdiction over the Project.

8.  At the end of the Project, Consultant will provide final construction documents with permit comments on Compact Disk ("CD") to Owner. The CD should be labeled with the type of project, project number, Branch name, full project address and Consultant's name, address and phone number. Final payment may be withheld contingent upon receipt of the CD.

**B.**  *Ethical Code of Conduct and Procurement Philosophy*

1.  It is the intention of Owner/Developer that procurements will be made to the best advantage in the open market without favoritism. Best advantage is defined as the most favorable offer available in the competitive market considering prices, quality, performance and payment terms.

2.  All employees of Owner/Developer involved in the procurement function are obliged under its "Code of Conduct" to perform business in an ethical manner, thus prohibiting them to accept any privileges, in fact or appearance, which might compromise their ability to execute a bona fide business transaction. Further, this prohibits them from seeking any improper advantage through contribution of funds, equipment or facilities or the provision of other gifts or benefits to public officials or political organizations. Specifically, no illegal or improper payment is to be made to any person or entity.

3.  By execution of this Agreement, Consultant acknowledges awareness of Owner/Developer's "Code of Conduct" and procurement philosophy noted herein. Additionally, Consultant acknowledges its intention to cooperate fully with Owner/Developer in developing only ethical business relationships.

4.  Should Consultant encounter any business activity in its efforts to establish a business relationship with Owner/Developer which suggests a violation of its philosophy, Consultant shall communicate such encounter to the Senior Vice President of Facilities.

**Article 6 - OWNER/DEVELOPER'S RESPONSIBILITIES**

**A.**  *Information*

1.  Owner/Developer shall provide sufficient information regarding requirements for the Project.

2.  Owner/Developer shall furnish additional information and shall render approvals and decisions as expeditiously as necessary for the orderly process of the Services.

3.  Owner/Developer shall make arrangements for Consultant to enter upon public and private lands as reasonably required for Consultant to perform the Services.

4.  Owner/Developer shall provide all reasonable and customary construction administration services required for the Project, including Project scheduling, progress inspections, selection of contractors and subcontractors, monitoring and approval of progress, change order process and payment to subcontractors.

5.  If Owner/Developer requires any changes in the Construction Documents, Owner/Developer shall provide necessary direction.

6.  Notwithstanding the foregoing, Consultant shall be responsible for and certify compliance with all applicable laws, statutes, ordinances and other governmental rules, regulations and requirements, including all amendments thereto, arising out of or relating to Consultant's performance of the Services (including but not limited to the Americans with Disabilities Act of 1990 and its implementing regulations and codes, and state laws, regulations and codes relating to access for individuals with disabilities to public accommodations) and may not rely on information which it knows or should know in the exercise of Consultant's professional services, to be incorrect.

**B.**  *Owner/Developer Representative.* The individual(s) named below shall serve as Owner/Developer's authorized agent(s) and representative(s) for the purpose of this Agreement (individually or collectively, "Owner/Developer's Representative"):

Jon A. Sandeen
Name

SVP/Director of Development
Title

9000 Atrium Way
Address

Mount Laurel, NJ 08054
City, State, Zip Code

Owner/Developer's Representative shall:

1.  Be responsible for clarifying the intent of Owner/Developer with respect to this Agreement or the Construction Documents;

2.  Be responsible for the management of the Construction Documents, the Project, Consultant and Owner/Developer's agents, employees, contractors and other consultants working on the Project;

3.  Periodically review Consultant's work;

4.  Provide approvals and authorizations as required hereunder for Consultant to take certain actions; and

5.  Review and approve Consultant's requests for payment. Unless Consultant receives written notice to the contrary from a Vice President or the President of Owner/Developer or its parent corporation, no person(s) other than the individual(s) designated herein as Owner/Developer's Representative shall be authorized to act on behalf of Owner/Developer with respect to this Agreement.

**Article 7 - COMPENSATION**

**A.**  *Payments.* Consultant shall provide Owner/Developer with monthly invoices for services rendered. Owner/Developer shall pay Consultant within thirty (30) days after the receipt of each such invoice.

**B.**  *Payment on Termination.* Except for a termination of this Agreement due to the breach thereof by Consultant, Owner/Developer will pay for all costs and fees earned up to the date of termination within thirty (30) days after Consultant has delivered any and all documents prepared pursuant to this Agreement prior to the date of termination. The compensation earned by and to be paid to Consultant by Owner/Developer in lieu of the Fee described in Article 7A, shall be determined by Owner/Developer in its reasonable discretion taking into account the value to the Project of the Services provided by Consultant prior to the date of termination.

**C.**  *Offset.* Notwithstanding anything to the contrary contained in this Agreement, (i) Owner/Developer may reduce any payments due Consultant under this Agreement by amounts owed by Consultant to Owner/Developer or any Affiliate of Owner/Developer (as hereinafter defined) resulting from any contract or other agreement between Consultant and Owner/Developer and/or such Affiliate ("Affiliate Contract"), and/or (ii) Owner/Developer may reduce any payments due Consultant under any Affiliate Contract by amounts owed by Contractor to Owner/Developer under this Agreement. For purposes of this Agreement, an "Affiliate" shall be any entity controlling, controlled by or under common control with, Owner/Developer.

**Article 8 - THE INSTRUMENTS OF SERVICE**

**A.**  All plans, designs, drawings, specifications, studies and other instruments of service produced for the Project by or on behalf of Consultant pursuant to this Agreement ("Instruments of Service") shall (i) contain all information necessary to obtain the requisite regulatory permits; (ii) conform to applicable laws, statutes,



ordinances, and governmental rules and regulations, including but not limited to the Americans with Disabilities Act of 1990 and its implementing regulations and codes, and state laws, regulations and codes relating to access for individuals with disabilities to public accommodations; (iii) be accurate and complete and meet generally accepted professional standards and principles; and (iv) be suitable for the intended purpose and use.

B.    Drawing size shall be 24" x 36" unless otherwise specified.

C.    Upon completion, one (1) copy of all instruments of Service Shall be submitted to Owner/Developer's Representative.

D.    All instruments of Service shall be the sole property of Owner/Developer, and Owner/Developer is vested with all rights therein, whether created by law or in equity; provided that Consultant's designs, drawings or specifications may not be used by Owner/Developer for any other project unless Owner/Developer provides prior notice to Consultant and agrees to pay a reasonable fee for such use. Owner/Developer hereby waives any claim against Consultant and agrees to indemnify and hold Consultant harmless from any claim or liability for injury or loss arising from Owner/Developer's unauthorized reuse of Consultant's designs, drawings or specifications.

Article 9 - THIRD PARTY CONSULTANTS

Consultant shall be responsible for the engagement of any third party consultants necessary for the completion of Consultant's services hereunder. All third party consultants shall be duly licensed in their respective field of specialization and shall perform services in accordance with accepted professional standards. Nothing in this proposal shall be deemed to create any contractual relationship between Owner/Developer and any individual, firm, or organization hired by Consultant.

Article 10 - LIENS

Consultant shall pay all third party consultants and other subcontractors and material suppliers engaged by Consultant in a timely manner to prevent liens being filed with respect to the Site or the Project. If Owner/Developer receives a notice of claim of lien due to non-payment by Consultant, or if a lien is filed due to non-payment by Consultant, Consultant shall, within thirty (30) days after receipt of written notice, (a) resolve the claim or lien and provide Owner/Developer with a lien waiver or release in recordable form or (b) alternatively at Consultant's expense, post a bond satisfactory to Owner/Developer indemnifying Owner/Developer against any such lien. Should Consultant fail to secure such waiver/release or bond within such thirty (30) days, Owner/Developer may, without notice, procure the bond at Consultant's expense or resolve the claim and make payment directly or indirectly to the claimant and deduct same from any monies due to Consultant.

Article 11 - INSURANCE

Prior to the commencement of the Service, Consultant shall at all times maintain the following insurance coverage from insurance companies that are licensed to do business in the state where the Project is located and have a General Rating of "A" or better as set forth in the most current issue of Best's Key Rating Insurance Guide:

A.    Worker's Compensation Insurance in accordance with applicable state requirements with a waiver of subrogation in favor of Owner/Developer;
B.    Errors and Omissions Insurance with limits not less than $2,000,000 combined single limit; and
C.    Such other insurance required by law, ordinance, rule or regulation.

Prior to commencement of Services, Consultant shall furnish Owner/Developer with Certificates of Insurance for each of the above insurance policies, providing, among other things, that Owner/Developer shall receive at least thirty (30) days prior written notice of any material change in, or cancellation of, such insurance.

If the consultant is working on Commerce premises, or is working on our behalf on the premises of others, they should provide evidence of Worker's Compensation insurance and should also provide evidence of general liability insurance, naming Commerce Bank "additional insured." If they are driving vehicles while working for us, they should provide "additional insured" status to Commerce Bank.

Article 12 - CONFIDENTIALITY

Consultant shall sign a Commerce Bancorp Confidentiality agreement.

Article 13 – INDEMNITY

A.    Indemnification by Commerce Bank. - Per Addendum C - Agency Agreement dated January 15, 2002 Paragraph 5.

B.    Indemnification by InterArch. - Per Addendum C - Agency Agreement dated January 15, 2002 Paragraph 6.

C.    Notification of Claim. Per Addendum C - Agency Agreement dated January 15, 2002 Paragraph 7.

D.    Survival. Per Addendum C - Agency Agreement dated January 15, 2002 Paragraph 8.

Article 14 - TERMINATION

A.    Per Addendum C – Agency Agreement dated January 15, 2002 Paragraph 11

Article 15 - CONSULTANT'S RECORDS

A.    Consultant shall maintain full and accurate records of all accounts of time and costs incurred in connection with this Agreement, including without limitation the Services, Additional Services and Reimbursable Expenses.

B.    Owner/Developer shall have the right to inspect and copy, with Consultant's assistance and cooperation, Consultant's books and financial records pertaining to Owner/Developer, the Services or Consultant's financial condition.

Article 16 - RELATIONSHIP OF PARTIES

Consultant is an independent contractor with respect to the Services performed hereunder. Nothing contained herein shall be deemed to create the relationship of partner principal, or joint venture between the parties. Consultant has no right or authority to incur obligations, of any kind in the name of or for the account of Owner/Developer nor to commit or bind Owner/Developer to any contract or other obligation.

Article 17 - NOTICES

All notices to be delivered under this Agreement shall be in writing, signed by the parties serving same and delivered personally or by registered or certified U.S. Mail postage prepaid, or by reputable private delivery service postage prepaid and providing a receipt to sender. Each such notice shall be deemed delivered upon actual delivery or refusal.

Notices shall be addressed as follows:

To Owner/Developer:    Commerce Bancorp, Inc.
Street Address:        1701 Route 70 East
City/State/Zip:        Cherry Hill, New Jersey 08034
Attn:                  President

To Consultant:         InterArch, Inc.
Street Address:        11000 Atrium Way
City/State/Zip:        Mount Laurel, NJ 08054
Attn:                  President

Article 18 - MISCELLANEOUS PROVISIONS

A.    This Agreement shall be governed by and construed in accordance with the laws of the state wherein the Project is located.

B.    Failure or delay on the part of either party to exercise any right, power, privilege or remedy under this Agreement shall not constitute a waiver thereof.

C.    No modification or, waiver by either party of any provision of this Agreement shall be deemed to have been made unless made in writing and signed by the parties.

D.    The provisions of this Agreement shall be severable and the invalidity of any provision, or portion thereof, shall not affect the enforceability of the remaining provisions.

E.    Neither party shall assign or transfer any interest in this Agreement.

F.    Consultant hereby warrants and represents that Consultant does not and will not during the course of the Project discriminate against any employee or applicant for employment based on race, color, sex, national origin, religion, age, handicap or other unlawful basis

G.    This Agreement shall be binding on, and inures to the benefit of, the respective parties successors and assigns.

IN WITNESS WHEREOF, Owner/Developer and Consultant through their duly authorized signatories have executed this Agreement as set forth below.

OWNER/DEVELOPER                    CONSULTANT

By: _____                By: _INTERARCH_
Name: _JON SANDELIN_               Name: _SHIRLEY HILL_
Title: _SVP - Dir. of Dir_         Title: _PRESi_
Date: _3/2/06_                     Date: _2·27·06_



**EXHIBIT "2"**

"Addendum C" 1 of 4

## AGENCY AGREEMENT

THIS AGENCY AGREEMENT ("Agreement") is entered into this 15th day of January, 2002, by and between COMMERCE BANCORP, INC., a New Jersey corporation with a business address of 1701 Route 70 East, Cherry Hill, New Jersey 08034 ("Commerce", for purposes of this Agreement, "Commerce" shall be deemed to include all subsidiaries of Commerce) and INTERARCH, INC. a New Jersey corporation with a business address of 11000 Atrium Way, Suite 100, Mount Laurel, New Jersey 08054 ("InterArch").

### BACKGROUND

InterArch has provided to, and the parties hereto desire InterArch to continue to provide to, Commerce and its subsidiaries various services, including without limitation, project administration and management services, planning and evaluation services, design services, construction procurement services, bidding and negotiation services, contract administration services and the procurement of furniture, fixtures, artwork and equipment (collectively the "Services").

The parties hereto desire to memorialize certain terms and conditions by which their relationship has been governed and by which they desire their relationship to continue to be governed.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants contained herein, and other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, and intending to be bound hereby, the parties hereto agree as follows:

1.     Definition.    For purposes of this Agreement, the term "Project" shall mean any specific work for which Commerce desires any of the Services offered by InterArch during the term hereof. Project shall be deemed to include all Projects undertaken by InterArch for Commerce during the term hereof and all Projects either completed and/or started by InterArch prior to the date hereof.

2.     Other Terms.   The specific Services required of InterArch by Commerce for any individual Project as well as the specific compensation and other terms and conditions shall be set forth in a separate agreement signed by both parties hereto; it being agreed that the terms set forth in this Agreement shall be deemed a part of any such separate agreement.

3.     Agency Designation.   Commerce hereby designates InterArch as its agent for purposes of Projects and InterArch hereby accepts such designation as Commerce's agent hereunder. InterArch shall be a representative of and shall advise and consult with Commerce (1) during planning and construction, and until final payment to the contractors is due, and (2) as an additional service at the Owner's discretion from time to time during the correction period described in the contracts for construction. InterArch shall have authority to act on behalf of Commerce only to the extent provided in this Agreement unless otherwise agreed to.

4.     Duties and Responsibilities.   As agent hereunder, InterArch will be entitled to rely upon any instructions or directions furnished to it by any officer or other representative designated as such by Commerce and to apply to such individuals for directions or instructions in

" Addendum C " 2 of 4

connection with its duties, and will be entitled to treat as genuine, and as the document it purports to be, any letter or other document furnished to it by such individuals. InterArch shall incur no liability or responsibility to Commerce or any third party for any action taken in reliance on, and in accordance with, any such instruction, direction, notice, resolution, waiver, consent, order, certificate, or other paper, document or instrument which conforms to the applicable requirements of this Agreement and which is reasonably believed by InterArch to be genuine and to have been signed, delivered, given or authorized by the proper party or parties.

5.   Indemnification by Commerce. Commerce shall fully indemnify InterArch against, and defend and hold it, its officers, directors, employees, agents and other representatives harmless from any and all liability and related expenses (including without limitation reasonable fees and expenses of its counsel) incurred by InterArch and its officers, directors, employees, agents and other representatives, which may arise out of acts performed or omitted in connection with Projects and this Agreement (i) by InterArch, its officers, directors, employees, agents and other representatives, except to the extent such liability or expense arises out if its or their own gross negligence or willful misconduct, or (ii) by Commerce or any of its officers, directors, employees, agents or other representatives.

6.   Indemnification by InterArch. InterArch shall fully indemnify Commerce against, and defend and hold it, its officers, directors, employees, agents, and other representatives harmless from, any and all liability and related expenses (including without limitation reasonable fees and expenses of its counsel) incurred by Commerce and its officers, directors, employees, agents and other representatives, which may arise out of acts performed or omitted by InterArch in connection with Projects and this Agreement due to InterArch's or its officers, directors, employees, agents or other representatives own gross negligence or willful misconduct.

7.   Notification of Claim. If any action or claim shall be brought or threatened to be brought against a party in respect of which indemnity may be sought pursuant hereto, such party shall, as soon as practicable (or, in the case of any action or claim which is threatened to be brought, as soon as practicable after such party actually becomes aware of the same) notify the party against whom indemnity may be sought in writing of such action or claim, and the circumstances thereof. In the event of any action or claim being brought or threatened to be brought against such party for which indemnification hereunder may be sought, each of the parties hereto shall provide to the other party hereto such information and assistance as such party shall reasonably request. Each party shall to the extent reasonable and practicable in all circumstances fully cooperate with and consult with the other party as and when reasonably requested by such party in respect of any action or claim referred to herein.

8.   Survival. The obligations set forth in Paragraphs 5, 6 and 7 shall survive any termination of this Agreement.

9.   Amendments. This Agreement may be amended, supplemented or otherwise modified only by a written instrument executed and delivered by each of the parties hereto.

10.   Governing Law and Jurisdiction. This Agreement will be governed by, and construed and interpreted in accordance with, the laws of the State of New Jersey applicable to

" Addendum C "  3 of 4

contracts entered into, and to be fully performed, in the State of New Jersey. In order to enforce the provisions of Section 18 hereof, the parties agree that the federal and state courts located in the County of Camden, State of New Jersey, shall have exclusive jurisdiction to hear and determine any suits, actions or proceedings and to settle any disputes between the parties relating to this Agreement and for such purpose each of the parties irrevocably submits to the jurisdiction of such courts. The provisions of this Paragraph 10 shall survive any termination of this Agreement.

11.   <u>Termination</u>. This Agreement shall be subject to the annual approval of the Commerce Board(s); provided, however, that this Agreement may be terminated by either party upon not less than sixty days' written notice (the "Notice Period") should the other party fail to materially perform in accordance with the terms of this Agreement and fails to cure such failure to perform within the Notice Period.

12.   <u>Counterparts</u>. This Agreement may be executed by the parties hereto on separate counterparts, which counterparts taken together will be deemed to constitute one and the same instrument.

13.   <u>Notices</u>. Any notice provided for herein must be in writing and shall be deemed given when received and shall be addressed as follows: (i) if to Commerce, to Commerce Bancorp, Inc., 1701 Route 70 East, Cherry Hill, New Jersey 08034, Attn: President, and (ii) if to InterArch to InterArch, Inc., 11000 Atrium Way, Suite 100, Mount Laurel, New Jersey 08054, Attn: President. A party may, by notice given in writing to the other party at its above address, designate another address for receipt of notices hereunder.

14.   <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

15.   <u>Severability</u>. In case any one or more of the provisions contained in this Agreement should be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall in no way be affected, prejudiced or disturbed thereby.

16.   <u>Assignment</u>. InterArch may not assign this Agreement, or any of its rights or obligations under this Agreement, whether by operation of law or otherwise, without the prior written consent of Commerce.

17.   <u>No Third Party Rights</u>. Nothing contained in this Agreement or referred to in this Agreement is intended, or shall be construed, to give to any person or other entity other than the parties to this Agreement any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement. This Agreement and all of its provisions are for the sole and exclusive benefit of the parties to this Agreement and their respective successors and permitted assigns.

18.   <u>Arbitration</u>.

(a)   Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and

*Addendum C   4 of 4*

decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

      (b)    Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitations.

      (c)    The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon in accordance with applicable law in any court having jurisdiction thereof.

      IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

Commerce Bancorp, Inc.

By: _____

Name: _____ Douglas J. Pauls

Title: _____ CFO _____

InterArch, Inc.

By: _____

Name: _____ Shirley Hill _____

Title: _____ President _____

EXHIBIT "3"

JACOBS & BARBONE, P.A.
A Professional Corporation
Attorneys at Law
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
Attorneys for Plaintiffs
jacobsbarbone@comcast.net

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VERNON HILL, II, SHIRLEY HILL and INTERARCH, INC., | Civil Action No. 1:09-cv-03685(RBK-JS) |
| Plaintiffs | Civil Action |
| v. | PLAINTIFFS SHIRLEY HILL AND INTERARCH, INC.'S ANSWERS TO INTERROGATORIES |
| COMMERCE BANCORP, LLC and TD BANK, NA, | |
| Defendants. | |

1.     Shirley Hill.

2.     Persons identified in the original and Amended Complaint, all persons identified in the documents submitted pursuant to your Demand for Production of Documents, namely Exhibit A thereto, and all persons identified herein.

3.     See document number 18 attached to Exhibit A in response to your Demand for Production of Documents; the individuals are identified by check mark.

4.     Objection; there is no allegation that InterArch "declined to seek and accept" other clients or business opportunities. Instead, my Complaint says in Paragraph 53 that over the past 35 years, "InterArch has foregone numerous other contracts and projects and devoted almost all of its time, effort and energy to serving Commerce's needs". In Paragraph 73, I explained that in order to meet the requests of Commerce, "InterArch declined to seek and to accept other business for the 2007 calendar year". Read in context, both paragraphs mean InterArch's work was full-time on behalf of Commerce without opportunity, ability or interest in seeking additional work.

5.     See document number 19, 20, 21 and 22 which confirm that Commerce continued to accept the services of InterArch. The documents additionally set forth the factual basis for the allegations of the Amended Complaint. Specific services itemized within document number 21 and 22 to Exhibit A appended by answer to your Demand for Production of Documents.

6.    See answer to number 5; also the scope of services as defined in the Master Agreement, document 16 to Exhibit previously cited. See also document number 15 to Exhibit A with regard to the definition of "project". Finally, see Article 8 to the Master Agreement, defining the "instruments of service", and particularly Paragraph D, contained within document number 16 to Exhibit A.

7.    The facts are those I specifically pled in the Amended Complaint, see Paragraphs 65-70 as well as document numbers 19, 20, 21 and 22 to Exhibit A.

8.    None in plaintiffs' possession to date.

9.    Commerce breached the aforenoted agreements specifically identified above, and utilized the same plans, specifications, drawings and work of InterArch without permission, authorization or payment.

10.    See the answers and documents supplied above in my answers to 6, 7, 8 and 9 of these Interrogatories.

11.    See answer to number 10.

12.    The factual basis for my demand of contractual indemnification is pursuant to the Master Agreement, Article 13-"Indemnity".  See document number 16 to Exhibit A. Additionally, Addendum C to that Agreement captioned "Agency Agreement" is supplied within Exhibit A as document number 15.  Paragraph 5 of Addendum C provides the basis for the contractual indemnity claim.

13.    Objection; previous demands for contractual indemnification are neither relevant nor capable of leading to discoverable or admissible evidence.  There is no allegation or claim in this action for contractual indemnification or advancement of defense costs for any particular "instance" except for the enforcement of contract rights.

14.    The applications for copyright registrations set forth in Paragraph 98 of the Amended Complaint will be supplied by supplementation.

15.    See answer to number 14.

16.    See answer to number 9, to be supplemented upon provision of information and documentation exclusively in defendants' possession.

17.    I founded InterArch and have been its President since 1973.  InterArch employed more than 60 employees and worked almost exclusively for Commerce for 35 years. The firm's work was nationally recognized and was instrumental in creating the unique and distinctive design of Commerce branches from Boston to Florida.  I performed my professional services free of charge for years to Commerce's benefit.  In exchange, Commerce breached its agreement, refused to pay for valuable services rendered, and hijacked the business of InterArch from me.  Those circumstances, along with the additional facts specifically alleged in the Amended Complaint, demonstrate a calculated effort to destroy more than three decades of accomplishments and have caused me significant emotional distress.

2

18.     Commerce currently owes InterArch approximately 2.9 million dollars exclusive of interest. The amount owed is for unpaid InterArch invoices from approximately June, 2007 through October of 2007 in addition to a unilateral 10% hold back on invoices that had been paid in part. The summary and calculation of outstanding invoices is appended to Exhibit A of my response to your Demand for Production of Documents, document number 23. Outstanding at present are specific demands upon Commerce to itemize and disclose all branches opened and completed by use and reproduction of InterArch's plans, designs and specifications. As such, a precise itemization of damage is pending the production of full discovery. The components of economic damage are however clearly identifiable as: (1) the unilateral retention of 10% payments by Commerce as stated above; (2) the failure to pay the outstanding invoices for work owed; (3) contractual damages for the defendants' breach of the contract term; (4) damages for the intentional and successful acquisition of InterArch employees; (5) monies due and owing for the continuous use of InterArch's designs, plans and specifications by Commerce following termination of the contract and its unauthorized use of InterArch's work product for its own economic gain. I estimate damages exceed $10,000,000.00, and shall rely upon expert reports and testimony to be supplied consistent with the Court's Scheduling Order.

19.     See answer to number 17 and 18. As to persons with knowledge, all of those identified within the documents produced, namely Exhibit A to my document production, as well as those identified in these answers, my Complaint and ongoing discovery.

20.     See the approval for InterArch's proposal for services for 2007, document response Exhibit A, number 21, memoranda by Jack R. Bershad dated February 20, 2007; also, the memoranda of Dennis M. DiFlorio, dated February 14, 2007, Exhibit A, number 20; see also the approval dated February 20, 2007, handwritten on the face of document number 22 along with the memoranda of Jon Sandeen dated February 13, 2007, document number 19. As to the historical service of InterArch to Commerce, see the report and exhibits of Commerce Bancorp, Inc. supplied within Exhibit A, document 17.

21.     No.

22.     No.

23.     N/A; see answers to number 21 and 22.

24.      N/A; see answers to number 21, 22 and 23.

25.     N/A; see answers to number 21 through 24.

## CERTIFICATION

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I further certify that I have read the annexed Interrogatories and answers thereto and certify that they are true in every detail according to my best knowledge, information and belief.

I hereby certify that the copies of the reports annexed hereto rendered by either treating physicians or proposed expert witnesses are exact copies of the entire report or reports rendered by them; that the existence of other reports of said doctors or experts, either written or oral, are unknown to me and if such become later known or available, I shall serve them promptly on the propounding party.

Shirley Hill

DATED: _2/12/10_____

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

VERNON W. HILL, II, SHIRLEY
HILL AND INTERARCH, INC.

**Plaintiffs**

v.

COMMERCE BANCORP, LLC
AND TD BANK, N.A.,

**Defendants.**

Civil Action No.:   1:09-cv-03685 (RBK-JS)

---

**DEFENDANTS COMMERCE BANCORP, LLC AND TD BANK, N.A.'s FIRST SET OF**
**INTERROGATORIES TO PLAINTIFFS SHIRLEY HILL AND INTERARCH, INC.**

TO:    JACOBS & BARBONE, P.A.
       A Professional Corporation
       Attorneys at Law
       1125 Pacific Avenue
       Atlantic City, NJ  08401
       Attorneys for Plaintiffs

**PLEASE TAKE NOTICE** that pursuant to Rule 33 of the Federal Rules of Civil

Procedure, the Defendants, Commerce Bancorp, LLC and TD Bank, N.A., demand that Plaintiffs

Shirley Hill and InterArch, Inc., answer the following interrogatories within the time provided by

Court Order.

BROWN & CONNERY, LLP
Attorneys for Defendants Commerce Bancorp, LLC
and TD Bank, N.A.

William M. Tambussi, Esq.
Susan M. Leming, Esq.
360 Haddon Avenue, P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
(856) 858-4967 (facsimile)

Dated: October 14, 2009

## DEFINITIONS

As used herein:

A.      "Address" means the present or last known street name and number, city or town, state and zip code.

B.      "Document" or "Writing" means, without limitations, any written, typed, printed, recorded or graphic matter, however produced or reproduced, of any type or description, regardless of origin or location, including without limitation all correspondence, records, tables, charts, analyses, graphs, spreadsheets, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), telegrams, telexes, messages (including, but not limited to, reports of telephone conversations and conferences), studies, books, periodicals, magazines, booklets, circulars, bulletins, instructions, papers, files, minutes, other communications (including, but not limited to, inter and intra office communications), questionnaires, contracts, agreements, assignments, licenses, ledgers, books of account, orders, invoices, statements, bills, checks, vouchers, notebooks, receipts, acknowledgments, data processing cards, computer records, tape recordings, wire recordings, "E-mail" or other "Electronically-stored information" (as defined below and by the applicable Rules), other mechanical recordings, transcripts or logs of any such recordings, all other data compilations from which information can be obtained, or translated if necessary, manuals, notebooks, business cards, advertisements, intra-corporation or intra-partnership communications, videotapes, brochures, microfilm, microfiche, speeches, photographs, drawings, maps, legal instruments (both final and preliminary drafts), computer software, tapes and printouts, purchase orders, bills of lading, registers, bank statements, balance sheets (both trial and final drafts), financial statements (both audited and unaudited), all types of receipts, and any other tangible thing of similar nature.

C.      "Electronically Stored Information (ESI)" means any computer-based or digitally stored files, including but not limited to, any currently maintained computer files as well as historical, archival, back-up, and legacy computer files, whether in current or historic media or formats, and all digital information responsive to any request herein. This includes any ESI which may be found on or retrieved from any computer, laptop, PDA, blackberry, cell phone, or similar device. ESI shall be produced in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably useable.

D.      "Oral Communications" means any verbal conversation or other statement from one person to another, including but not limited to, any interview, conference, meeting or telephone conversation.

E.      "Identify," "Identity," or "Identification" when used in reference to:

      1.      A natural person means to state such person's:

a.     Full name and any other names by which that person has ever been known;

b.     Present or last known home address and telephone number;

c.     Present or last known business address and telephone number;

d.     Present or last known position, business affiliation and job description;

e.     Social Security Number; and

f.     Date of birth.

2.     A company, corporation, association, partnership, or legal entity other than a natural person, means to state:

a.     Its full legal name;

b.     The name(s) under which it does business;

c.     The date of incorporation;

d.     The state or county of incorporation;

e.     If not a New Jersey corporation, the date authorized to do business in New Jersey;

f.     Whether it is now in good standing;

g.     If not in good standing, how and when it was dissolved or forfeited;

h.     The nature of the business in which it is engaged;

i.     The address of its principal place of business;

j.     The names and addresses of its directors, officers and/or principals at all times relevant to this case and presently; and

k.     Its relationship, if any, to any of the parties to this case.

3.     A document means to state:

a.     The date;

b.     The identity of the author, preparer or originator;

c.     The identity of the addressee(s);

d.     The type of document or subject matter;

e.     A detailed description of its contents;

f.     The present location of the document and its custodian; and

g.     Produce it for inspection and copying.

4.     A communication means to state:

a.     The identity of the speaker(s);

b.     A detailed description of what was said;

c.     The date and place the oral communication occurred;

d.     The identity of each participant and person present for any portion of the duration of the communication;

e.     The identity of every document referred to or used during the communication;

f.     The identity of each document that relates to the communication; and

g.   Produce any document related to the communication for inspection and copying.

F.   If you claim any form of privilege, whether based on statute, or otherwise, as a ground for not answering a request or any part thereof, set forth in complete detail each and every fact upon which the privilege is based, including sufficient facts for the Court to make a full determination whether the claim of privilege is valid.

G.   If you claim any form of privilege, whether based on statute, or otherwise, as a ground for not describing requested oral communications, state the following with respect to each such communication:

a.   The date hereof;

b.   The name, and present or last known home and business address and telephone numbers, title or position and occupation of each of the participants in the oral communication;

c.   The name, the present or last known home and business address and telephone numbers, title (or position) and occupation of each person present during all or any part of the oral communication;

d.   A description of the oral communication which is sufficient to identify the particular communication without revealing the information for which a privilege is claimed; and

e.   With sufficient specificity to permit the Court to make a full determination whether the claim of privilege is valid, state each and every fact or basis on which you claim any such privilege.

H.   Where the request calls for the description of a writing as to which you would claim a privilege, whether based on a statute or otherwise, as a ground for non-production, you shall set forth with respect to the writing, in addition to any other information requested, its (a) date, (b) author, (c) addressee, if any, (d) title, (e) type of tangible thing (e.g., letter, memorandum, telegram, chart, report, recording disc, etc.), (f) subject matter (without revealing the information as to which privilege is claimed), and (g) with sufficient specificity to permit the Court to make a full determination whether the claim of privilege is valid, each and every fact or basis which you claim such privilege.

I.   Where a request asks for a date or an amount, or any other specific information, it will not be an adequate response to state that the precise date, amount or other specific information is unknown to you where you are capable of approximating the information requested.

J.   The terms "related to" and "relating to" shall include, without limitation, describing, including, confirming, illustrating, summarizing, referring to, memorializing, recounting, communicating, reporting about, recapitulating, associated with, connected to, involving, supporting and regarding.

1165365.1

K.    "Person" or "Persons" means a natural person, firm, proprietorship, association, partnership, corporation or any other type of organization or entity.

L.    Any reference to any entity or organization, including, without limitation, a corporation or partnership, shall be deemed to refer to the entity or organization itself, its directors, officers, employees, representatives, agents, attorneys, and all person who acted (or purported to act) on its behalf, and such entity's or organization's predecessors or successors in interest, or other related affiliated entities controlled in whole or in part by such entity or organization, and the directors, officers, employees, representatives, agents, attorneys, and all person who acted (or purported to act) on behalf of those predecessors and successors in interest and other related or affiliated entities.

M.    "Defendants" means Commerce Bancorp, LLC and TD Bank, N.A. (collectively, "Commerce Bank") and any of its partners, subsidiaries, affiliates, shareholders, officers, directors, members clubs, representatives, employees, agents or servants, or any other person acting or purporting to act on behalf of any such persons, including, but without limitation, any attorney or consultant employed or retained thereby, and any other person over whom any of the foregoing exercise control.

N.    The terms "you", "yours", "yourself" and/or "Plaintiffs" mean Plaintiffs InterArch, Inc. and Shirley Hill and any other persons acting, or purporting to act, on behalf of Plaintiffs.

O.    "Amended Complaint" or "Action" means the Amended Complaint filed by Plaintiffs against Defendants Commerce Bancorp, Inc and TD Bank N.A., on or about August 20, 2009 and docketed in the United States District Court for the District of New Jersey under Civil Action No.: 1:09-cv-03685 (RBK-JS).

1165365.1

## INTERROGATORIES

1.    Identify each person who participated in preparing responses to these interrogatories or who supplied information for such purpose. Please identify each person by name, title of employment and specify the nature or extent of each person's participation and the specific information supplied by them.

**ANSWER:**

2.    Identify any persons with knowledge of anything related to this litigation, plaintiffs' claims or whom you intend to call as a witness to this matter. For each such person, include their name, title of employment; status of employment (present or former); present or last known address and/or telephone number; and complete description of the knowledge or information they possess.

**ANSWER:**

3.    Identify each InterArch employee whom you allege in Paragraphs 81 through 94 of the Amended Complaint was contacted by the Defendants. For each individual identified in the response, provide name, contact information, date of hire, date of termination (if applicable), current employer, and all documents which refer and/or relate to your response, including any employment agreement.

**ANSWER**

4.    Identify each client, prospective client and/or business opportunity which you allege InterArch "declined to seek and accept" and/or which is otherwise the subject of the claims as alleged in Plaintiffs' Amended Complaint. For each such entity or individual, include the following:

(a)    name of primary contact for such client and/or prospective client;

(b)    if an existing client, provide a description of the business between plaintiff and such client including any and all relevant dates and services provided together with any agreements between the parties; and

(c)    if a prospective client, provide a description of the communications and/or efforts by plaintiff to solicit and/or otherwise obtain business from such prospective client, the relevant time period, all persons who participated in such efforts, and any documents relating to the discussions

1165365.1

or prospective relationship (including any proposals for services, rates, offers, etc.).

**ANSWER:**


5.   Set forth the full factual basis for your allegation that "Commerce continued to accept the services of InterArch," as alleged in the Amended Complaint including a description of the alleged services, dates on which alleged services were provided, dates on which alleged services were accepted, representatives of defendants who allegedly accepted and/or approved the rendering of the alleged services, and produce any invoices or documents relating to the alleged services.

**ANSWER:**


6.   Specify each architectural design, plan, drawing, and specification which InterArch owns copyrights in, and which was allegedly infringed upon by the Defendants.

**ANSWER:**


7.   Describe with specificity all facts that you allege give rise to your breach of contract claim, including the contract and provision(s) that you allege was breached, what acts or omissions you allege breach the contract, when those acts or omissions allegedly occurred and all damages allegedly incurred as a result of that breach.

**ANSWER:**


8.   State whether you have obtained any statements or certifications from any persons related to any of the allegations in the Amended Complaint or in any way related to this matter. If so, please state the name and address of each person who gave a statement or certification, date on which such statement or certification was obtained, contents of statement or certification, and attach a copy of any writing pertaining to your answer to this interrogatory.

**ANSWER:**

1165365.1

9.    Set forth the full factual basis for your allegations of Quantum Meruit/Unjust Enrichment as alleged in the Fifth Claim for Relief of your Amended Complaint, and produce all documents which refer and/or relate to your response.

      **ANSWER:**

10.    Set forth the full factual basis for your allegations of Promissory Estoppel as alleged in the Sixth Claim for Relief of your Amended Complaint, and produce all documents which refer and/or relate to your response.

      **ANSWER:**

11.    Set forth the full factual basis for your allegations of Breach of Implied Covenant of Good Faith and Fair Dealing as alleged in the Seventh Claim for Relief of your Amended Complaint, and produce all documents which refer and/or relate to your response.

      **ANSWER:**

12.    Set forth the full factual basis for your allegations of Contractual Indemnification as alleged in the Ninth Claim for Relief of your Amended Complaint, and produce all documents which refer and/or relate to your response.

      **ANSWER:**

13.    Identify each and every instance when Plaintiffs demanded contractual indemnification and/or advancement of defense costs from Commerce, and set forth the date(s) on which each demand was made, the name and contact information for each individual that made the demand on behalf of Plaintiffs, the name and contact information for each individual to whom the demand was directed, the basis supporting the demand, the response to the demand, and produce any documents relating to the response.

      **ANSWER:**

14.    Please identify each and every copyright that Plaintiffs allege has been infringed by Defendants and for each copyright identify the U.S. Copyright registration number and produce a copy of the registration and/or application.

**ANSWER:**

15.    Identify each and every copyright InterArch alleges "to be the subject of additional forthcoming applications to the United States Copyright Office" and for which it claims valid copyrights and provide a description for each and produce a copy of the application.

**ANSWER:**

16     Set forth the full factual basis for each and every instance you allege that Commerce "copied and continues to use and/or exploit InterArch's IP" as alleged in the Amended Complaint including a description of the alleged use, dates on which the alleged use occurred, and produce any documents relating to the response.

**ANSWER:**

17.    Set forth the full factual basis for Shirley Hill's allegations of Intentional Infliction of Emotional Distress as alleged in the Eleventh Claim for Relief of the Amended Complaint, and produce all documents which refer and/or relate to your response.

**ANSWER:**

18.    Describe with specificity each and every element of monetary damages you claim in this Action and include the following:

       (a)    the amount of damages claimed and the dates the damages were incurred;
       (b)    how that amount of damage was computed;
       (c)    the basis for such claim of damages;
       (d)    the identity of all persons with knowledge thereof; and
       (e)    produce all documents which refer to your response.

**ANSWER:**

19.    Describe with specificity each and every element of non-monetary damages you claim in this Action and include the type of damages claimed and dates damages were incurred,

1165365.1

the basis for such damages, the identify of all persons with knowledge thereof, and produce all documents which refer or relate to your response.

**ANSWER:**

20.    Identify any admissions by any party regarding the subject matter of the Amended Complaint including the content of the admission, the date and location when the admission was made, the names and address of all witnesses with knowledge relating to the admission, and produce all documents which refer or relate to your response.

**ANSWER:**

21.    Has Shirley Hill consulted any physician or other healthcare provider, including but not limited to any psychiatrist, psychologist and/or counselor, regarding the alleged emotional distress she alleges to have suffered as a result of the matters alleged in this Action? If so, please state the following:

        a.    the name and address of each and every healthcare provider or physician consulted;
        b.    the date or dates of treatment;
        c.    the diagnosis, if any;
        d.    the nature of the treatment you received;
        e.    produce all writings related to your answer;
        f.    **<u>execute a medical authorization for the release of such records from each such provider identified as attached hereto.</u>**

**ANSWER:**

22.    Is Shirley Hill claiming any medical expenses for any matters referred to in response to the preceding interrogatory? If so, please set forth and itemize all expenses incurred and provide a copy of all bills incurred relating to the treatment, including but not limited to bills for any prescriptions.

**ANSWER:**

23.    State whether Shirley Hill is presently under the care of a physician and/or healthcare provider and, if so, identify the physician and/or provider, the frequency of care, the

- 5 -

1165365.1

nature of the care provided and the reasons and/or illnesses requiring such care. **Further, execute a medical authorization for the release of such records from each such provider identified as attached hereto**.

**ANSWER:**

24. State whether Shirley Hill is presently taking and/or has taken any prescription medications in the past ten (10) years. If so, specify the medication, the dosage and prescribing physician. **Further, execute a medical authorization for the release of such records from each such provider identified as attached hereto**.

**ANSWER:**

25. Set forth the name and address of Shirley Hill's primary care physician and any other physicians, hospitals, clinics and/or other health providers with whom she has treated for any medical conditions within the past ten (10) years. **Further, execute a medical authorization for the release of such records from each such provider identified as attached hereto**.

**ANSWER:**

## CERTIFICATION

I hereby certify that the foregoing answers to interrogatories are true. I am aware that if any of the foregoing answers to interrogatories are willfully false, I am subject to punishment.

I hereby certify that the copies of the reports annexed hereto rendered by proposed expert witnesses are exact copies of the entire report or reports rendered by them; the existence of other reports of said experts, written or oral are unknown to me and if such become later known or available, I shall serve them promptly on the propounding party.


_____
Shirley Hill

Dated:

1165365.1

## CERTIFICATION

I hereby certify that the foregoing answers to interrogatories are true.  I am aware that if any of the foregoing answers to interrogatories are willfully false, I am subject to punishment.

I hereby certify that the copies of the reports annexed hereto rendered by proposed expert witnesses are exact copies of the entire report or reports rendered by them; the existence of other reports of said experts, written or oral are unknown to me and if such become later known or available, I shall serve them promptly on the propounding party.


_____

InterArch, Inc.

Dated:

1165365.1

   
# AUTHORIZATION FOR HEALTH INFORMATION DISCLOSURE

### *PATIENT INFORMATION*
*(Individual whose information will be disclosed)*

Patient Name:_____Shirley Hill_____ Street Address:_____262 E. Main Street_____

City:_____Moorestown_____ State:_____NJ_____ Zip Code:____08057____ Date of Birth:_____

I hereby authorize:_____
*(Health care provider/health plan disclosing information)*

### *REQUESTOR/RECIPIENT INFORMATION*

Please disclose the following protected health information to:_____Brown & Connery, LLP_____

Street Address:_____360 Haddon Avenue_____ P.O. Box:_____350_____

City:___Westmont_____ State:__NJ___ Zip Code:_____08108_____

Description of health information to be disclosed:_____

_____**Any and all records in your possession which refer and or relate to me.**_____

_____

**Specify dates** of treatment (or date ranges) if applicable:_____

This request is for the purpose of:_____Litigation_____.

I understand that I have the right to revoke this authorization at any time. I understand that my revocation must be in writing and addressed to the above named health care provider/health plan authorized to make this disclosure. I understand that the revocation does not apply to information that has already been released in response to this authorization. Unless otherwise revoked, this authorization will expire in six months or on the following date:_____.

I understand that any disclosure of information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. I understand that I may inspect and/or copy the information to be disclosed. I understand that authorizing this disclosure is voluntary and is not a condition of treatment, payment, enrollment or eligibility for benefits. I understand that if I have any questions about disclosure of my health information, I may contact the health care provider/health plan listed above that is authorized to disclose this information and request a copy of this authorization.

I understand that my health record may include information pertaining to the treatment of drug and alcohol abuse, mental illness, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV), sexually transmitted diseases, tuberculosis or genetics.

**IF YOU DO NOT WISH THIS INFORMATION TO BE RELEASED, PLEASE INITIAL; DO NOT RELEASE_____.**


_____        _____
Signature of Patient or Authorized Representative        Date

_____        _____
Description of Representative's Authority (witness signature required)        Signature of Witness

1148979.1