NOT FOR PUBLICATION                                    (Doc. Nos. 148, 150)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                        :
VERNON W. HILL, II, SHIRLEY HILL,       :
and INTERARCH, INC.,                    :
                                        :
            Plaintiffs,                 :          Civil No. 09-3685 (RBK/JS)
                                        :
      v.                                :          **OPINION**
                                        :
COMMERCE BANCORP, LLC, et al.,          :
                                        :
            Defendants.                 :
_____ :

**KUGLER**, United States District Judge:

      This case is one of many lawsuits arising out of the messy separation between banking

entrepreneur Vernon W. Hill and Commerce Bank.  In addition to claims by Mr. Hill stemming

from his termination by Commerce Bank in 2007, this case also involves claims by Mrs. Hill and

her design firm, InterArch, Inc. ("InterArch") against Defendants Commerce Bancorp, LLC and

TD Bank, N.A. (collectively "Commerce") based on a contract between Commerce and

InterArch.  Currently before the Court are two motions by Commerce for partial summary

judgment:  (1) denying Mrs. Hill and InterArch's claim that Commerce is contractually obligated

to pay their legal fees and expenses in this action, (Doc. No. 150); and (2) denying Mr. and Mrs.

Hill's claims for intentional infliction of emotional distress, (Doc. No. 148).  Because

InterArch's agreement with Commerce does not include an explicit fee-shifting provision, and

because neither Mr. nor Mrs. Hill offer any evidence in support of their claim for intentional

infliction of emotional distress, the Court grants both motions for partial summary judgment.

## I.       BACKGROUND

Mr. Hill founded Commerce Bancorp, Inc. ("Commerce Bancorp") in 1973 in Marlton, New Jersey.  Over thirty years, he built the company into a large and successful regional bank. As of mid-2007, Commerce Bank, N.A. ("Commerce Bank"), a wholly-owned subsidiary of Commerce Bancorp, operated more than 425 branches throughout the east coast.  During Mr. Hill's thirty-four years with Commerce Bank, the bank worked with real estate developers, including development firms in which Mr. Hill had a financial interest.  One entity with which the bank did business was InterArch, a full-service architectural and design firm founded by Mrs. Hill.  InterArch provided extensive services to the bank, including interior design, exterior design, space planning, move coordination, and landscape design.  Mrs. Hill is the president of InterArch.

Mr. Hill served as chairman, president, and CEO of Commerce Bank and Commerce Bancorp.  His employment with Commerce Bancorp was pursuant to a written agreement, which provided for a five year term, beginning in 1992, and which renewed automatically on each anniversary date for a new five-year term.  On March 14, 2006, Mr. Hill entered into the Amended and Restated Employment Agreement (the "Employment Agreement"), which continued his employment for a five-year period from January 1, 2006 through December 31, 2011.  Pursuant to the Employment Agreement, Mr. Hill's base salary was $1 million per year plus bonuses, which totaled $1.5 million in 2006.  The Employment Agreement permitted Commerce Bancorp to terminate Mr. Hill's employment with or without cause.  A termination without cause entitled Mr. Hill to certain benefits, including a lump sum severance payment equal to the full compensation he would have received for the remaining term of the Employment Agreement, the right to participate in the bank's medical, disability, hospitalization,

and life insurance benefits for three years, and the immediate vesting of Mr. Hill's options to
purchase Commerce Bancorp stock.  If Commerce terminated Mr. Hill's employment without
cause, the Employment Agreement required Commerce to make the required severance
payments to Mr. Hill within thirty days of the termination.

On June 28, 2007, the Board of Directors of Commerce terminated Mr. Hill without
cause, effective July 31, 2007.  After the termination, Mr. Hill demanded payment under the
Employment Agreement's severance provisions and also exercised his vested stock options.
Commerce never paid the demand and never executed the stock options.

Mrs. Hill's company InterArch also had a contractual relationship with Commerce during
the same period.  In 2002, InterArch entered into an Agency Agreement with Commerce,
whereby Commerce agreed to "continue" using InterArch for certain design, management, and
administration services.  Pursuant to the Agency Agreement, it was the parties' practice for
InterArch to submit to Commerce for approval a proposal of services for the upcoming year,
which included a list of services that InterArch intended to perform for Commerce and included
a rate schedule for that work.  Commerce's Board of Directors typically approved the proposal
and notified InterArch of its acceptance.

On February 27, 2006, InterArch and Commerce executed a Master Agreement for
Architectural/Engineering/Consultant Services (the "Master Agreement"), which ran from
January 1, 2006 to December 31, 2006.  Throughout 2006, Commerce and InterArch acted
consistent with the Master Agreement.  In December 2006, InterArch submitted its 2007
proposal of services to Commerce.  The Board of Directors accepted and approved the proposal
on February 20, 2007.  InterArch interpreted that acceptance as renewing the same terms and
conditions as the Master Agreement, which expired December 31, 2006, thus extending its term

until December 31, 2007.  Notwithstanding this arrangement, Commerce terminated its

relationship with InterArch effective October 31, 2007.

The Master Agreement incorporates by reference the Agency Agreement's

"Indemnification" provisions.  Section 5 of the Agency Agreement (the "Indemnification

Provision") provides:

> Indemnification by Commerce.  Commerce shall fully indemnify
> InterArch against, and defend and hold it, its officers, directors,
> employees, agents and other representatives harmless from any and
> all liability and related expenses (including without limitation
> reasonable fees and expenses of its counsel) incurred by InterArch
> and its officers, directors, employees, agents and other
> representatives, which may arise out of acts performed or omitted
> in connection with Projects and this Agreement (i) by InterArch,
> its officers, directors, employees, agents and other representatives,
> except to the extent such liability or expense arises out of its or
> their own gross negligence or willful misconduct, or (ii) by
> Commerce or any of its officers, directors, employees, agents or
> other representatives.

Mr. and Mrs. Hill commenced this action on January 14, 2008 in the United States

District Court for the District of Columbia.  The action was later transferred to this Court,

whereupon Plaintiffs filed the Amended Complaint.  The Amended Complaint alleges eleven

causes of action:  (1) breach of contract (by Mr. Hill against Commerce Bancorp); (2) breach of

the implied covenant of good faith and fair dealing (by Mr. Hill against Commerce Bancorp); (3)

contractual indemnification (by Mr. Hill against Commerce Bancorp); (4) breach of contract (by

InterArch against Commerce Bancorp and Commerce Bank); (5) quantum meruit/unjust

enrichment (by InterArch against Commerce Bancorp and Commerce Bank); (6) promissory

estoppel (by InterArch against Commerce Bancorp and Commerce Bank); (7) breach of the

implied covenant of good faith and fair dealing (by InterArch against Commerce Bancorp and

Commerce Bank); (8) tortious interference (by InterArch against Commerce Bancorp); (9)

4

contractual indemnification (by InterArch and Mrs. Hill against Commerce Bancorp and Commerce Bank); (10) copyright infringement (by InterArch against Commerce Bancorp and Commerce Bank); and (11) intentional infliction of emotional distress (by Mr. and Mrs. Hill against Commerce Bancorp and Commerce Bank).

In September 2009, Commerce moved to dismiss Count Ten (copyright infringement by InterArch against Commerce), and, in November 2009, Mr. Hill moved for partial summary judgment on Counts One, Two, and Three. In June 2010, the Court granted Commerce's motion to dismiss Count Ten and denied Mr. Hill's motion for partial summary judgment. (Doc. Nos. 131, 132). Plaintiffs have twice moved to file a Second Amended Complaint, but the Court denied both motions. Commerce now moves for partial summary judgment denying Counts Nine and Eleven. Count Nine alleges that the Indemnification Provision requires Commerce to indemnify InterArch and Mrs. Hill for legal fees and expenses: (1) incurred as a result of bringing this action against Commerce; and (2) incurred as a result of responding to various regulatory investigations. Count Eleven alleges that Commerce intentionally caused Mr. and Mrs. Hill emotional distress during Mr. Hill's separation from the bank and by terminating InterArch's agreement with Commerce.

In response to Commerce's motion, Mrs. Hill and InterArch abandon their claim that the Indemnification provision requires Commerce to pay for expenses incurred as a result of the regulatory investigations. However, InterArch maintains that Indemnification Provision requires Commerce to pay InterArch's legal fees and expenses in this action. Mr. and Mrs. Hill did not submit any opposition regarding Commerce's motion for partial summary judgment denying Count Eleven.

## II.      LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony.  Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 575 (D.N.J. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial.  See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995).  The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact.  Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e).  "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment."  Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).  Thus, if a plaintiff does not oppose a defendant's motion for summary judgment denying the plaintiff's claims, it is proper for the Court to infer that the plaintiff has abandoned the subject claims and enter judgment for the defendant.  See Carrier v. City of Plainfield, No. 07-2739, 2009 U.S. Dist.

6

LEXIS 103096, at *26 (D.N.J. Nov. 4, 2009) (entering summary judgment denying plaintiff's

claims because plaintiff did not respond to defendant's motion for summary judgment).

When a motion for summary judgment involves an issue of contract interpretation, the

court can grant summary judgment if the contract is unambiguous.  Emerson Radio Corp. v.

Orion Sales, Inc., 253 F.3d 159, 163-164 (3d Cir. 2001).  A contract provision is ambiguous only

if it is reasonably susceptible to alternative interpretations.  Id. at 163-64.  "The determination

whether a contract term is ambiguous is a question of law that requires a court to 'hear the

proffer of the parties and determine if there [are] objective indicia that, from the linguistic

reference point of the parties, the terms of the contract are susceptible of different meanings.'"

Id. (quoting Sheet Metal Workers, Local 19 v. 2300 Grp., Inc., 949 F.2d 1274, 1284 (3d Cir.

1991)).

## III.   DISCUSSION

### A.  Mrs. Hill and InterArch's Claim for Indemnification (Count Nine)

InterArch alleges that it is entitled to contractual indemnification from Commerce for

legal fees, costs, and expenses incurred as a result of bringing this law suit to enforce its

agreements with Commerce.[1]  Commerce argues that the Indemnification Provision applies only

to third-party liabilities incurred as a result of the parties' performance under the agreement, and,

therefore, it does not apply to legal fees incurred to enforce InterArch's agreements with

Commerce.  In other words, Commerce argues that the Indemnification Provision is not a fee-

shifting provision.  InterArch responds that the Indemnification Provision's plain language

requires Commerce to indemnify InterArch for costs incurred to enforce the Agreement.  Neither

---

[1] InterArch claims that the Indemnification Provision applies to InterArch's expenses incurred as a result of prosecuting its contract and quasi-contract claims against Commerce.  Because the Court finds that the indemnification provision is intended to apply only to third-party liability, the Court need not address whether the parties intended the Indemnification provision to include quasi-contract claims by InterAch against Commerce.

party submits any extrinsic evidence in support of its interpretation of the Indemnification Provision.[2]

The Indemnification provision provides, in relevant part: "Commerce shall fully indemnify InterArch against . . . any and all liability and related expenses (including without limitation reasonable fees and expenses of its counsel) incurred by InterArch . . . which may arise out of acts performed or omitted in connection with Projects and this Agreement . . . by Commerce . . . ." InterArch argues that the phrase "in connection with Projects and this Agreement," reveals that the Indemnification Provision is intended to have a dual application. First, the word "Projects" indicates the provision applies to liabilities to third-parties arising out of performance under the agreement. Second, the phrase "this Agreement" indicates that the provision also applies to any expenses InterArch incurs as a result of Commerce's breach of the agreement. Commerce responds that the Indemnification Provision does not include a specific fee-shifting provision for actions brought to enforce the agreement, and the Court should not read such a provision into the agreement. Commerce also argues that the provision applies only if InterArch incurs "liabilities and related expenses" stemming from an act or omission by Commerce, and InterArch has not incurred any "liabilities" as a result of Commerce's alleged breach.[3]

---

[2] InterArch makes reference to Mrs. Hill's personal understanding of the Indemnification Provision at the time she executed the Agency Agreement. (See Pl.'s Br. in Opp'n. to Def.'s Mot. Summ. J., at 1). InterArch cites to Mrs. Hill's certified Answers to Commerce's Interrogatories as evidence of Mrs. Hill's personal understanding of the meaning of the Indemnification Provision. However, Mrs. Hill's answers do not provide any extrinsic evidence relevant to the meaning of the indemnification provision. Mrs. Hill certifies only that "[t]he factual basis for [her] demand for contractual indemnification is pursuant to the Master Agreement, Article 13-'Indemnity.'" (Ex. 3 to Cert. of Susan M. Leming dated November 12, 2010).

[3] According to Commerce, if InterArch succeeds with its claims against Commerce, it is Commerce that will incur a liability and not InterArch.

The parties agree that New Jersey substantive law governs the interpretation of their agreements.  It is well-established under New Jersey law that the intent of the parties controls when interpreting a contract.  See Pacifico v. Pacifico, 920 A.2d 73, 77 (N.J. 2007); Great Atl. & Pac. Tea Co. v. Checchio, 762 A.2d 1057, 1060-61 (N.J. Super. Ct. App. Div. 2000).  "The starting point in ascertaining that intent is the language of the contract."  Commc'n Workers of Am., Local 1087 v. Monmouth Cnty. Bd. of Soc. Serv., 476 A.2d 777, 781-82 (N.J. 1984) (citations omitted).  The court's role when interpreting a contract "is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'"  Pacifico v. Pacifico, 920 A.2d 73, 77 (N.J. 2007) (quoting N. Airlines, Inc. v. Schwimmer, 96 A.2d 652, 656 (N.J. 1953)).  "The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded."  N. Airlines, Inc., 96 A.2d at 656.

In addition to those general principles of contract interpretation, New Jersey has developed particular canons of construction for indemnification and fee-shifting provisions based on their respective purposes.  An indemnification provision is usually used to allocate risk of loss stemming from the parties' performance under the contract.  See Stier v. Shop Rite of Manalapan, 492 A.2d 1055, 1061 (N.J. Super. Ct. App. Div. 1985).  Indemnification provisions allow parties to allocate between themselves the risk that they may incur liabilities to third parties during the performance of the contract.  See Berry v. V. Ponte & Sons, 400 A.2d 114, 116 (N.J. Super. Ct. App. Div. 1979) ("where there is potential for multi-party liability based on multi-party participation in an overall transactional chain, the parties in that chain are free to

9

allocate among themselves, as a matter of business convenience or necessity, the overall insurance burden in respect of coverage for claims of third parties arising out of the transaction as a whole.  The technique for such allocation is, of course, indemnification agreements").  In other words, indemnification provisions allow parties to allocate responsibility for possible injuries or liabilities incurred "on the job."  Leitao v. Damon G. Douglas Co., 693 A.2d 1209, 1211 (N.J. Super. Ct. App. Div. 1997).  Thus, to the degree indemnification provisions address attorneys' fees and costs, they usually provide that the indemnitor agrees to cover the indemnitee's costs of defending against third-party claims arising out of performance under the contract.  See Shan Indus., LLC v. Tyco Int'l (US), Inc., No. 04-1018, 2005 U.S. Dist. LEXIS 30170, at *9 (D.N.J. Nov. 30, 2005) (applying New York law but making the broad observation that general references to attorneys' fees in indemnification provisions refer to "indemnification for third-party actions").

Because a party is "ordinarily liable for its own negligence," Kieffer v. Best Buy, 14 A.3d 737, 743 (N.J. 2011), a court must strictly construe an indemnification provision against the indemnitee if the provision is ambiguous, Mobile Dredging & Pumping Co. v. City of Gloucester, No. 04-4624, 2005 U.S. Dist. LEXIS 16601, at *8 (D.N.J. Aug. 4, 2005) (citing Mantilla v. NC Mall Assocs., 770 A.2d 1144, 1150-51 (N.J. 2001)).  If the provision is unambiguous, a "contract indemnity clause[] should be interpreted like all contracts, looking at both the language of the contract and the intent of the parties."  Mobile Dredging & Pumping Co., 2005 U.S. Dist. LEXIS 16601, at *8 (citing Cozzi v. Owens Corning Fiber Glass Corp., 164 A.2d 69, 71 (N.J. Super. Ct. App. Div. 1960)).

Fee-shifting provisions generally address a different issue than indemnification provisions.  Like most states, "New Jersey strictly adheres to the 'American rule' in regards to

attorney's fees." First Atl. Fed. Credit Union v. Perez, 918 A.2d 666, 670 (N.J. Super. Ct. App.

Div. 2007).  Under the American Rule, parties to a dispute "bear their own counsel fees."  Dep't

of Envtl. Prot. v. Ventron Corp., 468 A.2d 150, 166 (N.J. 1983); N. Bergen Rex Transp. v.

Trailer Leasing Co., 730 A.2d 843, 848 (N.J. 1999) ("New Jersey has a strong policy disfavoring

shifting of attorneys' fees.").  A prevailing party can therefore recover attorneys' fees only if

they are expressly provided for by statute, court rule, or contract.  Litton Indus., Inc. v. IMO

Indus., Inc., 982 A.2d 420, 427 (N.J. 2009) (citing Packard-Bamberger & Co., Inc. v. Collier,

771 A.2d 1194, 1202 (N.J. 2001)).  "[W]here attorney-fee shifting is controlled by contractual

provisions, courts will strictly construe that provision in light of the general policy disfavoring

the award of attorneys' fees."  N. Bergen Rex Transp., 730 A.2d at 848.  Consequently, New

Jersey does not permit fee-shifting unless the contract explicitly authorizes it under the particular

circumstances of the dispute.  See McGuire v. Jersey City, 593 A.2d 309, 317-18 (N.J. 1991)

(refusing to apply fee-shifting provision to claim for breach of contract); Satellite Gateway

Commc'ns, Inc. v. Musi Dining Car Co., 540 A.2d 1267, 1270-72 (N.J. 1988) (holding that a

lease provision granting counsel fees to the landlord if the tenant defaulted, did not permit a fee

award to an assignee of the original tenant).

InterArch alleges in Count Nine that pursuant to the Indemnification Provision,

"Commerce shall reimburse InterArch for any legal fees it expends to enforce its agreements

with Commerce."  (Am. Compl. ¶ 161).  InterArch further asserts that Commerce is required to

reimburse it for "costs and expenses" that it incurred in "the instant contractual dispute."  (Id. ¶

162).  Count Nine is therefore based on InterArch's position that the Indemnification Provision is

a fee-shifting provision in derogation of the "American Rule."  Ventron Corp., 468 A.2d at 166.

Thus, applying the above principles, InterArch may pursue its claim only if the Indemnification

Provision explicitly provides for fee shifting in disputes between InterArch and Commerce.  As discussed below, the Court finds that the Indemnification Provision does not apply to this contract dispute between InterArch and Commerce.  Rather, the language and structure of the Master Agreement suggest that the parties intended the Indemnification Provision to apply only to third-party liabilities incurred during InterArch's performance.

First, the Indemnification Provision states that Commerce will "defend and hold [InterArch] . . . harmless from any and all liability and related expenses . . . incurred by InterArch . . . ."  Although the provision provides that "related expenses" includes attorneys' fees, the provision applies only to attorneys' fees that are related to liabilities that InterArch incurs as a result of Commerce's acts or omissions.[4]  The phrase "liabilities . . . incurred by InterArch" qualifies the Indemnification Provision's scope.  That is, Commerce is liable for only those attorneys' fees that are related to liabilities incurred by InterArch.

In this case, the cause of InterArch's attorneys' fees is Commerce's alleged breach of the agreement, which cannot fairly be called a "liability" of InterArch.  See Black's Law Dictionary 914 (9th ed. 2009) ("Liability, 1. The quality or state of being legally obligated or accountable . . . 2. A financial or pecuniary obligation.").  Indeed, InterArch's attorneys' fees are the result of Commerce's alleged liabilities; not InterArch's liabilities.  Thus, because the Indemnification Provision applies only to attorneys' fees related to InterArch's liabilities, the provision does not apply to this contract dispute between InterArch and Commerce.[5]

---

[4] The provision also applies to liabilities that InterArch incurs as a result of its own acts or omissions, but that subsection of the provision is not at issue here.

[5] InterArch's argument that the phrase "this Agreement" includes Commerce's obligations to InterArch under the agreement is inapposite.  The phrase "this Agreement" is qualified by the global introductory clause limiting Commerce's indemnification obligation to "any and all liability . . . and related expenses" that InterArch incurs as a result of Commerce's acts or omissions "in connection with . . . this Agreement."  The phrase "this Agreement" modifies "any and all liabilities."  Thus, Commerce is obligated to pay InterArch's fees and costs only if InterArch incurs those fees as a result of liabilities incurred in connection with the agreement.

Second, other provisions in the Agency Agreement suggest that indemnification relates to third-party liabilities and not direct contract claims between InterArch and Commerce.  The Indemnification Provision is followed by a provision titled "Notification of Claim."  That provision states that "[i]f any action or claim shall be brought or threatened to be brought against a party in respect of which indemnity may be sought pursuant hereto, such party shall . . . notify the party against whom indemnity may be sought in writing of such action or claim."  That provision clearly presumes that indemnification relates to circumstances where either InterArch or Commerce are sued by a third-party.  If indemnification related to direct claims between Commerce and InterArch, the notice requirement would be, at least in part, superfluous.  See Hooper Assocs., Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 905 (N.Y. 1989) (concluding that a notice requirement was indicative of parties' intent to limit indemnification provision to only third-party claims).

Third, although the Indemnification Provision makes specific reference to attorneys' fees and costs, it does not explicitly provide for fee-shifting in disputes between Commerce and InterArch to enforce the agreement.  Rather, the Indemnification provision provides that Commerce shall pay InterArch's attorneys' fees and expenses related to "any and all liability . . . incurred by InterArch . . . ."  Nowhere does the provision say that Commerce will pay InterArch's fees and expenses if InterArch sues Commerce to enforce the agreement.  Under New Jersey law, the Court may not imply such a provision.  See Rock Work, Inc. v. Pulaski Const. Co., Inc., 651 A.2d 1063, 1066-67 (N.J. Super. Ct. App. Div. 2007) (refusing to imply fee-shifting provision from arbitration provision); New Flyer of Am., Inc. v. Mid-Newark, L.P., No. A-4791-08T1, 2010 N.J. Super. Unpub. LEXIS 1473, at *17 (N.J. Super. Ct. App. Div. July

6, 2010) (refusing to infer that fee-shifting provision was reciprocal when the provision made reference to indemnification for only one party).

      Fourth, although the parties do not cite any New Jersey authority addressing whether an indemnification provision should be construed to include a dispute between the contracting parties to enforce the contract, other jurisdictions that follow the American Rule have rejected InterArch's arguments.  For example, in Hooper, the parties entered into a contract that included an indemnification provision that obligated the defendant to "'indemnify and hold harmless [plaintiff] from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees' arising out" of the parties' agreement.  Hooper, 548 N.E.2d at 905.  The plaintiff sued the defendant for breach of their agreement and asserted that the indemnification provision required the defendant to pay its attorneys' fees.  Id. at 903.  The New York Court of Appeals held that the indemnification provision did not include direct claims between the contracting parties.  Id.  The Court of Appeals began its analysis with the principle that, under the American Rule, parties should bear their own litigation costs.  Id. at 904.  The Court of Appeals therefore strictly construed the indemnification provision and held:  "The clause in this agreement does not contain language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant.  On the contrary, it is typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim."  Id. at 905; see Shan Indus., LLC, 2005 U.S. Dist. LEXIS 30170, at *9 (applying Hooper and concluding that broad indemnification provision did not include claims between contracting parties).  The language at issue in this case is substantially the same as the language at issue in Hooper.  Thus, in view of New Jersey's strict adherence to the American Rule and its strong policy disfavoring fee shifting, the Court finds Hooper's reasoning and holding persuasive.

Finally, InterArch relies on a Third Circuit opinion in support of its position.  See First Jersey Nat'l Bank v. Dome Petroleum, Ltd., 723 F.2d 335 (3d Cir. 1983).  In Dome, the Third Circuit applied New Jersey law to determine whether the parties intended a contract provision to operate as a fee-shifting provision.  Id. at 339-40.  The provision at issue stated that the defendant "agreed[] to indemnify and hold [the plaintiff] harmless from and against any and all claims, actions, judgments, damages, losses, liabilities, costs and expenses of any nature whatsoever (including without limitation attorney's fees), arising directly or indirectly from, out of or incident to this Agreement . . . ."  Id. at 340.  The Third Circuit concluded that this language "covers a loss that results from a breach of the [a]greement."  Id.  The Third Circuit therefore held that the clause permitted the plaintiff to recover its attorneys' fees and costs.  Id.

InterArchs' reliance on Dome is misplaced.  The provision at issue in Dome differs significantly from the language at issue here.  In Dome, the defendant clearly agreed to indemnify the plaintiff for more than third-party liabilities.  The provision expressly applied to any losses, costs, or attorneys' fees arising directly or indirectly from the parties' agreement. The Third Circuit found that attorneys' fees expended to enforce the agreement qualify as a "loss" arising from the agreement.  Id. at 340-41.  In contrast, the Indemnification Provision here applies only to attorneys' fees "related" to "liabilities" incurred by InterArch as a result of Commerce's acts or omissions.  As noted above, Commerce's alleged breach is not a "liability" for InterArch but, to the contrary, a potential source of recovery.  Thus, the Third Circuit's holding in Dome does not apply here because the Indemnification Provision does not include similar all-encompassing language.

In sum, the Court holds that the Indemnification Provision cannot reasonably be interpreted to apply to InterArch's attorneys' fees and costs incurred as a result of bringing this

action against Commerce to enforce the parties' agreement.  The Court therefore grants

Commerce's motion for partial summary judgment denying Count Nine of the Amended

Complaint.

### B.  Mr. and Mrs. Hill's Claim for Intentional Infliction of Emotional Distress (Count Eleven)

Mr. and Mrs. Hill assert a claim for intentional infliction of emotional distress stemming

from Commerce's termination of Mr. Hill's employment and Commerce's termination of its

relationship with InterArch.

To succeed on a claim for intentional infliction of emotional distress, a plaintiff must

prove:  (1) that the defendant acted "intentionally or recklessly;" (2) that the defendant's conduct

was "extreme and outrageous;" (3) that the defendant's actions were the proximate cause of

plaintiff's emotional distress; and (4) that the plaintiff's emotional distress was so severe that "no

reasonable person could be expected to endure such distress."  Rusak v. Ryan Auto., L.L.C., 12

A.3d 239, 247-48 (N.J. Super. Ct. App. Div. 2011) (citing N.J. Model Jury Charge (Civil), 3.30F,

Intentional Infliction of Emotional Distress (1999)).  The last element, severe emotional distress,

is an "elevated threshold for  . . . damages."  Buckley v. Trenton Sav. Fund Soc., 544 A.2d 857,

863 (N.J. 1988).  A plaintiff must present some evidence proving that the defendant's conduct

caused a "severe and disabling emotional or mental condition which may be generally

recognized and diagnosed by professionals trained to do so, including … posttraumatic stress

disorder."  Taylor v. Metzger, 706 A.2d 685, 697 (N.J. 1998).  Self-reported symptoms such as

"loss of sleep, inability to concentrate, loss of appetite, anxiety, nervousness, depression and

other assorted debilitating physical and emotional ailments" are insufficient to prove the requisite

harm.  Sellitto v. Litton Sys., 881 F. Supp. 932, 941 (D.N.J. 1994).

16

Commerce argues that Mr. and Mrs. Hill's claim for intentional infliction of emotional distress should be denied because there is no evidence that they suffered the requisite "severe emotional distress." Commerce notes that both Mr. and Mrs. Hill admit in their certified answers to interrogatories that they did not consult any physicians, psychiatrists, psychologists, counselors, or other healthcare providers regarding their alleged emotional harm. They also admit that they did not sustain any medical expenses, take any medications, or retain an expert to testify regarding their alleged emotional damage. Neither Mr. nor Mrs. Hill opposed Commerce's motion for partial summary judgment denying their claim for intentional infliction of emotional distress.

To survive summary judgment, a plaintiff must present at least some evidence proving each element of his or her claim. See Luscko v. Southern Container Corp., No. 06-3896, 2009 U.S. Dist. LEXIS 119365, at *18 (D.N.J. Dec. 23, 2009) (granting summary judgment because plaintiff failed to provide any evidence in support of a necessary element of his claim). Here, Mr. and Mrs. Hill submit no evidence in support of their claim for intentional infliction of emotional distress. Moreover, their certified responses to Commerce's interrogatories establish that they cannot prove the requisite severe emotional distress. Thus, the Court grants Commerce's motion for partial summary judgment denying Count Eleven of the Amended Complaint.

## IV.     CONCLUSION

For the reasons stated above, the Court grants Commerce's motions for partial summary judgment dismissing Counts Nine and Eleven of the Amended Complaint. An appropriate Order shall enter.

Dated: 6/8/2011

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge