UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY - CAMDEN VICINAGE

| | |
|---|---|
| VERNON W. HILL, II,<br><br>Plaintiff<br>v.<br><br>COMMERCE BANCORP, LLC and TD BANK, N.A.,<br><br>Defendants. | Civil Action No. 1:09-cv-03685(RBK-JS)<br><br>Civil Action |

PLAINTIFF'S BRIEF IN SUPPORT OF HIS F.R.C.P. 59 MOTION FOR A NEW TRIAL

JACOBS & BARBONE, P.A.<br>
A Professional Corporation<br>
Attorneys at Law<br>
1125 Pacific Avenue<br>
Atlantic City, New Jersey 08401<br>
(609) 348-1125<br>
jacobsbarbone@comcast.net<br>
Attorneys for Plaintiff

On the Brief:

    Edwin J. Jacobs, Jr., Esquire

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................. i

TABLE OF AUTHORITIES ........................................... ii, iii

PROCEDURAL HISTORY/STATEMENT OF FACTS .............................. 1

LEGAL ARGUMENT ..................................................... 2

    POINT I – PLAINTIFF MUST BE AFFORDED A NEW TRIAL BECAUSE THE COURT ERRED AS A MATTER OF LAW BY ANSWERING THE JURORS' IRRELEVANT QUESTION AND BY RESPONDING WITH AN ANSWER THAT UNDULY PREJUDICED PLAINTIFF. ......................... 2

        A. THE COURT SHOULD NOT HAVE ANSWERED THE JURORS' QUESTION; INSTEAD, THE JURY SHOULD HAVE BEEN TOLD NOT TO CONSIDER THE EFFECT OF A VERDICT FOR PLAINTIFF. .. 7

        B. THE COURT'S ANSWER TO THE JURORS' QUESTION UNDULY PREJUDICED PLAINTIFF BECAUSE THE LAW REGARDING WHETHER A FEDERAL JUDGMENT CAN BYPASS 12 C.F.R. 359.4 IS UNSETTLED, AND THE JURY WAS TOLD THAT A VERDICT FOR PLAINTIFF WOULD VIOLATE THE LAW AND PLAINTIFF WOULD NOT RECEIVE THE JURORS' AWARD. ............... 9

CONCLUSION ........................................................ 13

## TABLE OF AUTHORITIES

**CASES:**

Advanced Med., Inc. v. Arden Med. Sys., Inc., 955 F.2d 188, 199 (3d Cir. 1992) ................................3

Carter v. Kentucky, 450 U.S. 288, 302 (1981) ................2

Conley v. Very, 450 F.3d 786 (8th Cir. 2006) ............5, 8

Krohn v. New Jersey Full Insurance Underwriters Assoc., 316 N.J. Super. 477, 481-82 (App. Div. 1998) .................4

Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1259 n. 15 (3d Cir. 1991) ............................2

McDonough Power Equipe., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) ...................................................2

Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 137 (3d Cir. 1997) ..............................................3, 10

Shannon v. United States, 512 U.S. 573 (1994) .............4, 7

Smith v. Phillips, 455 U.S. 209, 217 (1982) ..................2

Weiss v. Goldfarb, 154 N.J. 468, 480 (1998) .................11

Wenz v. Allstate Insurance Co., 20 A.2d 989 (App. Div. 1998) ..........................................................3, 4, 8

**RULES & STATUTES:**

12 C.F.R. 359.4 .......................................1, 6, 7, 9, 11

12 C.F.R. 359.4(a)(4)(i-iv) .................................7

F.R.C.P. 59 ..............................................1, 2

F.R.C.P. 61 ................................................3

N.J.R.E. 411 ...............................................4

**OTHER AUTHORITIES**

Extrinsic Policies Affecting Admissibility, 10 Rutgers
L.Rev. 574, 594 (1956) ...................................... 4

**PROCEDURAL HISTORY/STATEMENT OF FACTS**

The Plaintiff is Vernon W. Hill, II (hereinafter "plaintiff"). This lawsuit was filed against defendant Commerce Bancorp, LLC, (hereinafter "Commerce" or collectively "defendants") on January 14, 2008, and later amended on August 20, 2009 to include defendant T.D. Bank, NA (hereinafter collectively "defendants"). See Doc. Nos. 1 and 77. Trial commenced on May 5, 2013 and ended with the jury's verdict for defendants on May 21, 2013. See Doc. Nos. 457 to 484.

On May 21, 2013 the jury began their deliberations at 1:30 p.m. See Doc. No. 480. Shortly before 2:40 p.m., the jury submitted their sole question to the Court:

> If we award for the plaintiff does this
> bypass federal approval?

See Doc. No. 481. The Court responded by telling the jury that 12 C.F.R. 359.4 states that plaintiff cannot be paid without the approval of the federal regulators. See Exhibit A. Fifteen minutes later, at 3:00 p.m., the jury returned a verdict in defendants' favor. See Doc. No. 483.

Plaintiff now Moves pursuant to F.R.C.P. 59 for a New Trial.

1

**LEGAL ARGUMENT**

POINT I

PLAINTIFF MUST BE AFFORDED A NEW TRIAL BECAUSE THE COURT ERRED AS A MATTER OF LAW BY RESPONDING TO THE JURORS' IRRELEVANT QUESTION WITH AN ANSWER THAT UNDULY PREJUDICED PLAINTIFF.

Pursuant to F.R.C.P. 59:

> (a) In General.
>
> (1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
>
> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court;

"Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law". Carter v. Kentucky, 450 U.S. 288, 302 (1981). "One touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.'" McDonough Power Equipe., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (quoting Smith v. Phillips, 455 U.S. 209, 217, (1982)). A jury instruction, taken as a whole, must inform the jury of the correct legal standard. Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1259 n. 15 (3d Cir.1991).

2

When a jury instruction is erroneous, a new trial is warranted unless such error is harmless. See Advanced Med., Inc. v. Arden Med. Sys., Inc., 955 F.2d 188, 199 (3d Cir.1992). An error is harmless if it is "highly probable" that the error did not contribute to the judgment. Id. An erroneous jury instruction may also be considered harmless when, taking the instructions as a whole, the erroneous instruction is a "solitary misstatement of law" buried in an otherwise correct legal explanation. Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 137 (3d Cir.1997). See also F.R.C.P. 61:

> Unless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

The issue of whether jury instructions prejudiced a party thereby requiring a new trial often arises in the context of a jury being exposed to the actual effect of their verdict. For example, the court in Wenz v. Allstate Insurance Co., 20 A.2d 989 (App. Div. 1998) held that the trial court's instructions stating that the tort-feasor was uninsured and the defendant was the UM carrier was erroneous and prejudicial. Id. at 990-991.

In reversing the trial court and remanding the matter for a new trial, the Appellate Court aptly held:

> The fact that the monies were to come from a UM policy, the existence or nonexistence of coverage of the tortfeasor, and the amount of coverage plaintiff might have under his own policy, not only is clearly irrelevant to the issue of damages, but potentially quite prejudicial if revealed to the jury.
>
> We have recently observed that, "[a]s a general rule, the probative value of information regarding whether a person is insured or not is substantially outweighed by the potential for undue prejudice." Krohn v. New Jersey Full Insurance Underwriters Assoc., 316 N.J.Super. 477, 481-82 (App.Div. 1998). Cf. N.J.R.E. 411. On the one hand, awareness by the jury of the existence of insurance is thought to present the danger of an award of damages based upon the "deep pockets" of the carrier. Biunno, Current N.J. Rules of Evidence, comment to N.J.R.E. 411, at 439 (1998-99), (citing Judson F. Falknor, Extrinsic Policies Affecting Admissibility, 10 Rutgers L.Rev. 574, 594 (1956)). On the other hand, "the potential of evidence of lack of insurance for prejudicing a plaintiff's cause is obvious. The jury may feel sorry for the defendant and either exonerate him completely or return a much lower verdict against him than the facts warrant." Id. at 440.

Wenz, supra, 720 A.2d at 991. (Emphasis added). See also Shannon v. United States, 512 U.S. 573 (1994):

> The principle that **juries are not to consider the consequences of their verdicts** is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime

4

> charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. **Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.**

Id. at 579 (emphasis added).

Another example of an erroneous jury instruction warranting a new trial is illustrated in Conley v. Very, 450 F.3d 786 (8th Cir. 2006). In Conley, a State prisoner brought a §1983 action against a correctional offer, alleging that the officer failed to protect him in violation of the Eighth and Fourteenth Amendments. Id. at 787. The jury, during deliberations, asked the district court the following question: "Have there been any past complaints against Defendant for denying [protective custody] requests?" Id. Over Conley's objection, the court instructed the jury that "no evidence was presented." Id. The jury returned a verdict in favor of defendant less than forty minutes after they received this answer, and the district court subsequently denied Conley's motion for a new trial. Id. In reversing the district court and remanding the matter for a new trial, the Eighth Circuit held as follows:

> **When answering a question from a jury, a district court must take care not to inject an irrelevant issue into the case. If the**

5

> **jury appears to be focused on an irrelevant matter, then the court's response should disabuse the jury of its mistaken belief that an irrelevant matter is important to its verdict.** In this case, the parties agree that evidence of past complaints about Very was irrelevant, but the court's response to the jury's inquiry-that "no evidence was presented that past complaints had been made against Mr. Very"-implied that such evidence would have been relevant to the case. There is a reasonable likelihood, therefore, that the jury interpreted the district court's response to mean that the absence of evidence showing prior complaints about Very tended to make less probable the allegation that Very failed to respond to *Conley's* request for protective custody. **The court's response may have been factually accurate, but the substance of the jury's question was irrelevant, and that is what the jury should have been told**

Id. (internal citations omitted and emphasis added).

Similarly here, after about an hour of deliberations, this jury submitted the following question:

> If we award for the plaintiff does this bypass federal approval?

See Doc. No. 481. The Court committed two fundamental errors in responding to that question. First, this Court should have refused to answer the question and then disabused the jury from considering irrelevant issues, such as collectability of a judgment and the actual effect of verdict. Second, the Court's answer, that 12 C.F.R. 359.4 states that plaintiff cannot be paid without the approval of the federal regulators, deprived plaintiff of a fair trial because the answer: 1) implicitly told

6

the jury that they cannot find for plaintiff without violating the law; 2) was akin to telling the jury that any verdict for plaintiff would be uncollectable, and thus futile; and 3) was incorrect. See Exhibit A, Certification of Edwin J. Jacobs, Jr., Esquire.

> A. THE COURT SHOULD NOT HAVE ANSWERED THE JURORS' QUESTION; INSTEAD, THE JURY SHOULD HAVE BEEN TOLD NOT TO CONSIDER THE EFFECT OF A VERDICT FOR PLAINTIFF.

Hopefully, the jury was not confused about any section of 12 C.F.R. 359.4(a)(4)(i-iv). That regulation was explained in two opening and closing statements, again throughout most of the trial testimony and this Court provided additional guidance in the jury instructions. The jury was also given a copy of that regulation as an exhibit to review during deliberations. Instead, the jury was really asking this Court to answer the following irrelevant questions: are we violating the law (12 C.F.R. 359.4) if we award money for plaintiff, and will plaintiff actually get the money we awarded?

The Court should have refused to answer the jurors' question because "[i]nformation regarding the consequences of a verdict therefore is irrelevant to the jury's task". Shannon, 512 U.S. at 579. The sole function of a jury is to decide the facts and apply it to the law that is provided by the court. Whether a judgment is collectible is irrelevant to the

reasonableness of defendants' alleged impossibility defense and the value of plaintiff's employment agreement. This Court's decision to answer the jurors' irrelevant question implied that it was permissible for the jury to speculate about issues such as collectability or the effect of its verdict, instead of simply resolving the factual disputes.

Such irrelevant information is kept from jurors' consideration because it permits the jury to return a verdict which is based on emotion, rather a straight-forward application of the facts to the law. For example, a jury will undoubtedly be more comfortable awarding money if they knew that an insurance company would be responsible to satisfy a judgment. Wenz, supra. Or, a large monetary award for a deserving plaintiff could be refused if a jury was told that it is uncollectable because it would cause the defendant to enter bankruptcy to nullify the entire award. The potential for speculative verdicts based solely on human emotions are as limitless as the range of human emotion itself.

The failure of this Court to follow the Eighth Circuit's holding in Conley, supra., by simply telling the jury that the effect of their verdict is irrelevant and not to consider the issue, warrants a new trial.

> B. THE COURT'S ANSWER TO THE JURORS' QUESTION UNDULY PREJUDICED PLAINTIFF BECAUSE THE LAW REGARDING WHETHER A FEDERAL JUDGMENT CAN BYPASS 12 C.F.R. 359.4 IS UNSETTLED, AND THE JURY WAS TOLD THAT A VERDICT FOR PLAINTIFF WOULD VIOLATE THE LAW AND PLAINTIFF WOULD NOT RECEIVE THE JURORS' AWARD.

Telling the jury that they cannot bypass the federal regulators and award plaintiff damages is the same as telling the jury that it would be illegal to return a verdict in plaintiff's favor. It is difficult to think of a more prejudicial statement that a Court can give to a deliberating jury, except when, as here, defendants' sole defense was impossibility.

It is undisputed that plaintiff has an enforceable employment agreement with defendants. It is likewise undisputed that the contract is governed by 12 C.F.R. 359.4 and the federal regulators have never stated that it is impermissible for defendants to pay plaintiff. Therefore, the jury's only role was to determine whether defendants proved their impossibility defense, and if not, to determine the value of plaintiff's employment agreement.

But, the jurors' question clearly meant they were concerned about whether they could award plaintiff monetary damages in light of 12 C.F.R. 359.4. The Court's response, that the regulation states that defendants cannot pay plaintiff without the approval of the federal regulators, is the same as telling

9

the jury that they cannot award monetary damages to plaintiff without violating that regulation. The jury could interpret the Court's statement no other way than it is impossible to return a verdict for plaintiff because payment resulting from a federal judgment would still require the approval of the federal regulators. The Court's endorsement of that line of reasoning poisoned the deliberation process and coerced the jury into adopting defendants' impossibility defense.

Nor can this error be deemed harmless when viewing the Court's answer with the other jury instructions as a whole. This jury heard testimony from eleven witnesses, over eight days, regarding highly complex issues, such as the origin and operations of a 35-year old bank, its subsequent merger and the interplay of same with federal regulators. Yet, the jury asked a **single question**, more than an hour after the jury instructions were read by the Court, and it solely dealt with an issue not covered by those instructions: the effect of their verdict. Compare Ryder, 128 F.3d at 137 (where the Third Circuit ruled that an erroneous jury instruction did not warrant a new trial because the instruction was "offset by the court's repeated correct explanation of Ryder's burden of proof" which occurred immediately after the erroneous one). The temporal proximity alone between this Court's answer and the jury's verdict is

proof that the jury was affected, as there was **only fifteen minutes** between the two. See Doc. No. 480.

Another prejudicial implication from the Court's answer was that a monetary award for plaintiff would be uncollectable because payment can only be made after regulatory approval. The jury likely viewed their verdict as a nullity because it would not result in payment. Such thinking makes a jury less inclined to find for plaintiff because their verdict, in essence, has no real effect. See Weiss v. Goldfarb, 154 N.J. 468, 480 (1998) ("…whether a monetary verdict is collectable or a defendant had insurance is irrelevant to the jury").

Finally, the Court's answer was also, respectfully, incorrect. A federal judgment is enforceable and 12 C.F.R. 359.4 is silent as to whether it applies to a federal judgment. The jury did not hear any testimony about whether the federal regulators have to approve a payment which results from a federal judgment. Nor is there any case law whatsoever dealing squarely with that issue. If the jury returned a verdict in favor of plaintiff, and that judgment was not stayed, plaintiff could execute on defendants' assets to satisfy the judgment. Otherwise, there was no reason to submit the damages question to the jury in a two-week trial, for a five year old lawsuit.

The Court merely assumed that the federal regulators would intervene because of their response to the hypothetical question

11

this Court posed during its April 23, 2012 telephone conference. However, this Court and the regulators plainly said no one has encountered this situation before:

> THE COURT: So what happens then if there is a judgment in favor of the plaintiff against the defendant and the plaintiff seeks to enforce that judgment, for instance, by sending out the U.S. Marshal to scoop up all the cash at the local branch of the bank to enforce the judgment. What happens? What does the FRB or the FDIC do at that point?
>
> MR. KURAY: Judge, this is John Kuray at the Federal Reserve. **I'm not sure we've ever encountered that situation. I think** again the position that all three agencies have taken consistently through this is as Ms. Villarreal pointed out, no matter how it comes about, there is going to have to be approval. And because legally this is covered by the law it's also covered by the FDIC's regulation, and our view simply is that they would have to make the required application and we would have to review it. Either us, the FDIC or the OCC and the FDIC.
>
> THE COURT: Yeah. But then the Bank is operating under compulsion of the court to pay a judgment which the Federal Reserve Board says they can't pay. Now how do we resolve that problem? Does the Federal Reserve Board move to intervene in the case then?
>
> MR. HENCKE: **Again, your Honor, we've never really encountered that situation and I'm not quite sure where we would go with that.** But **I think** that we would certainly take the position that even if there is a judgment by the jury, that there is still a requirement under the law to seek and obtain, if possible, the necessary approval.

See Document No. 281, 12:18 to 13:19.

The end result of that telephone conference was discussion of **potential** outcomes if the jury found for plaintiff, but nothing beyond mere speculation. Thus, it was imprudent to respond to the jurors' question with an answer that absolutely foreclosed the possibility that the regulators would have simply accepted the jurors' verdict as to liability and damages. In that scenario, the jury has bypassed the federal regulators.

## CONCLUSION

Respectfully, this Court deprived plaintiff of a fair trial when it answered the jurors' question about an irrelevant issue, the effect of their verdict, instead of refusing to answer that question and admonishing the jury not to consider the issue. That error was then compounded when this Court provided the jury with an answer that could only be interpreted as meaning that the jury could not lawfully find for plaintiff, thereby endorsing defendant's impossibility defense. Plaintiff's Motion for a New Trial must be granted.

> Respectfully Submitted,
>
> JACOBS & BARBONE, P.A.
> Attorneys for Plaintiff
> Vernon W. Hill, II
>
> BY: /s/ Edwin J. Jacobs, Jr.
>     Edwin J. Jacobs, Jr., Esquire

Dated: June 17, 2013